## 1741. DUBLIN FERTILIZER WORKS *v.* CARTER.

A corporation was authorized by its charter to carry on the business of manufacturing and selling commercial fertilizers and dealing in all articles embraced in such manufacture and sale. It made an executory agreement for the delivery to it, at a stipulated price, of a certain number of bales of cotton by a fixed time. The uncontroverted evidence shows that in connection with its business it was usual and necessary for the corporation to deal in cotton. *Held,* that the contract was not ultra vires, and any damage resulting from its breach was recoverable.

Complaint, from city court of Dublin—Judge Jordan.    February 6, 1909.

Submitted April 16,—Decided November 9, 1909.

*J. E. Burch, Daley & Daley*, for plaintiff.

*W. C. Davis, G. B. Davis, J. S. Adams*, for defendant.

HILL, C. J.    The Dublin Fertilizer Works sued J. W. Carter to recover damages for breach of contract.    By the contract the defendant agreed to deliver to the plaintiff 200 bales of cotton, averaging not under 500 pounds per bale, at the price of 10 cents per pound, "basis of good middling, standard Savannah classification," to be delivered not later than October 20, 1907, at Dublin, Georgia, in lots of not less than 5 bales at a time.    It was alleged and proved that the defendant delivered only 10 bales of cotton to the plaintiff under this contract, and refused to deliver the remainder, and it was also alleged and proved that cotton was worth 11 cents per pound at Dublin, Georgia, on the date when the 200 bales were to be delivered under the contract; and the suit was to recover the difference between the contract price of 10 cents per pound and the market price of 11 cents per pound at the date when the cotton was to be delivered, on 190 bales of cotton.    The facts were not controverted; and at the conclusion of the evidence the court directed a verdict for the defendant, on the ground that the contract which was the basis of the suit was not authorized by the plaintiff's charter, and was therefore ultra vires.

The plaintiff was incorporated by an order of the superior court of Laurens county, as the Dublin Fertilizer Works, "for the purpose of conducting a business of manufacturing and manipulating of fertilizers, to handle, mix, and manipulate cotton seed, meal, acid, ammonia and other ingredients that go into the manufacturing of commercial fertilizers, buying and selling for cash or credit such articles as are embraced in the manufacturing and sale of fertilizers.    To act as agents or special agents for other persons or companies in selling or handling any articles or class of articles appropriate to the fertilizer business, or usually or conveniently connected therewith.    To buy, sell and own real estate," etc.    The secretary of the plaintiff corporation testified, that he and his brother, who was the president of the corporation, owned the entire capital stock (of $5,000) of the corporation; that he made the contract for the purchase of the 200 bales of cotton with the defendant, under

the authority of his brother; and that this contract had "nothing to do with the payment of fertilizers, nor in the manufacturing of fertilizers; there was no ingredient in that cotton that we use in the manufacture of fertilizers;" also that in the manufacturing and selling of guano, "it is necessary for us to deal in cotton.   We deal in cotton all the time in connection with the fertilizer business."

The defendant also filed a plea in which he set up that the contract in question was "a gambling and speculative contract, for the breach of which there could be no recovery."   This plea seems not to have been insisted on in the court below, and is not referred to in the briefs submitted to this court; and this defense will be treated as having been abandoned.   The only question for the decision of this court is, whether the trial court erred in holding that the contract was ultra vires.

Of course, a corporation is a mere creature of the law and has no authority outside of the powers conferred upon it by the act of its creation.   A corporation is limited in its operation to the objects and purposes expressly set forth in its charter, or to such powers as are necessarily incidental to the execution of those expressly granted.   The authority expressly granted to the Dublin Fertilizer Works was to conduct a business of manufacturing and dealing in commercial fertilizers, and generally to handle any articles or class of articles appropriate to the fertilizer business, or usually or conveniently connected therewith.   The testimony of the secretary of the company, which is not disputed, is that in the manufacturing and selling of guano it was necessary for the company to deal in cotton, and that the company did as a matter of fact deal in cotton all the time, in connection with its fertilizer business.   This being true, it would seem to follow that the purchase of 200 bales of cotton by the contract in question was not an act of the corporation entirely ultra vires, but was a contract made in connection with the fertilizer business and as an incident to the selling of commercial fertilizers. The doctrine of ultra vires had its origin at the time when corporations were nearly all of a public or quasi-public character; and, as applicable to these classes of corporations, the doctrine should still be strictly adhered to.   But we concur in the opinion of Judge Thompson, that the doctrine of ultra vires has no proper place in the law of private corporations, organized merely for the purpose of private gain, except in respect of contracts which are bad in

themselves, the making of which is prohibited by a consideration of public morals, or justice, or of sound public policy, or prohibited by the statute law on grounds connected with the public good. 28 Amer. Law Review, 398, 406. As was said by the Supreme Court in the case of *Towers Excelsior Co.* v. *Inman*, 96 *Ga.* 509 (23 S. E. 419), "The law sustains a defense of ultra vires only where an imperative rule of public policy requires it." Certainly no rule of public policy is violated by the contract in question. According to the testimony, the contract was authorized by all the stockholders of the corporation. Both parties to the contract testified that the actual delivery of the cotton was contemplated; and it was therefore a valid contract, under the ruling of the Supreme Court, if within the power of the corporation to make it. *Forsyth Manufacturing Co.* v. *Castlen*, 112 *Ga.* 199 (37 S. E. 81, 81 Am. St. R. 28) ; *Watson* v. *Hazlehurst*, 127 *Ga.* 299 (56 S. E. 459). None of the reasons upon which the doctrine of ultra vires is based apply to this contract. It is simply a contract made by a private trading corporation with an individual, opposed to no public policy, prohibited by no law of the State, and in which the public has no interest whatever; and to strike down a contract of this character, as being ultra vires, it seems to us would be to encourage dishonesty and a want of fair dealing as to private contracts, without subserving any public benefit. We think, as above stated, that the contract now under consideration was not an ultra vires contract, but even if it was, under the facts of this case it would seem to be inequitable and unjust to permit such a defense. Some of the cotton had been delivered by the defendant under the contract, and, relying upon the faith of the contract, the plaintiff had itself entered into other contracts for the resale of the cotton which it expected to be delivered to it by the defendant at the time stated. Suppose the case had been reversed and cotton had gone down, instead of up, between the date of the contract and the time of the delivery, could this plaintiff, with any show of justice or right, have refused to receive the cotton if it had been delivered or tendered by the defendant, on the ground that its contract was ultra vires? The doctrine of ultra vires should never be allowed to prevail where it would work a legal wrong; and such would be the result, it seems to us, in this case, where the only apparent reason on the part of the defendant for a failure to comply with his contract according to its terms was the

fact that the price of cotton had increased. But a further theoretical discussion of the question would be purely academic. Construing the contract and the language of the charter in the spirit of what we have above said, and in the light of the evidence, we hold that the contract was fully authorized, and as the proof of the breach and the resulting damage was undisputed, the court, instead of directing a verdict for the defendant, should have directed a verdict for the amount of the suit in behalf of the plaintiff.

*Judgment reversed.*