## 2539. FARMERS UNION WAREHOUSE CO. v. HOLLIS.

No error of law appears, and the evidence fully supports the verdict.

DECIDED OCTOBER 14, 1910.

Complaint; from city court of Tifton—Judge Eve. February 12, 1910.

*L. P. Skeen, J. S. Ridgdill, C. C. Hall,* for plaintiff in error.

*Fulwood & Murray, R. D. Smith,* contra.

HILL, C. J. Hollis, the plaintiff, was a cotton ginner, and the Farmers Union Warehouse Company was a cotton-warehouse corporation. A verbal contract was made between them by which Hollis agreed to deliver to the warehouse company, all cotton ginned by him, the company agreeing to collect for him the ginning charges when the customers of the warehouse took their cotton out. The suit was for the amount claimed by him as due on cotton which he had ginned and delivered to the warehouse, and which the warehouse company had delivered to its customers without collecting the ginning charges. The jury returned a verdict for the plaintiff, and the defendant's motion for a new trial was overruled. The general grounds of the motion are without merit. While the evidence is not very clear as to the number of bales on which the defendant had failed to collect the ginning charges for the plaintiff, yet there is sufficient evidence to warrant the amount which the jury found by their verdict; and certainly the defendant could not justly complain of the amount of the verdict after the plaintiff had voluntarily written off a large portion thereof.

There are three legal objections urged to the validity of the verdict and the judgment rendered thereon: (1) that the contract was unilateral; (2) that it was a contract of suretyship or guaranty on the part of the defendant to pay the debt of the plaintiff and was not in writing, and was therefore void as against the statute of frauds; (3) that it was ultra vires.

1. Under the evidence the contract was beneficial to both parties and was not unilateral. By its terms the plaintiff was enabled to gin more cotton and had some one to collect his ginning charges. The defendant's business as a warehouseman was increased from the fact that by the contract it was enabled to have a greater number of bales of cotton, and was also enabled to keep them for a

longer time and thereby get a larger amount of warehouse charges. Both the customers of the gin and the warehouse were benefited by the arrangement; for they were not compelled to pay their ginning charges immediately, but were permitted to wait until their cotton was sold before paying the charges. The evidence is very clear that the contract was not only made for the mutual benefit of both parties, but was in fact mutually beneficial to them, because it increased the business of both.

2. The contract was not void as against the statute of frauds. It was not a promise by the warehouse company to pay the ginning charges for the owner of the cotton, but simply an agreement to collect the charges from the owners as they received their cotton, for and in behalf of the ginner; and in consideration of the services thus to be performed for him by the warehouse company, he placed the cotton with it. Besides, the plaintiff's evidence is that he paid $50 to the warehouse company to perform such services. The contract on the part of the ginner was fully performed when he sent to the warehouse the cotton on which his ginning charges were unpaid, and this cotton was accepted by the warehouse in accordance with its contract with the ginner. In other words, the contract was fully executed so far as the ginner was concerned, and for that reason was not within the statute of frauds. Civil Code of 1895, § 2694.

3. The contract was not ultra vires. The business of the warehouse corporation was to handle cotton and to charge for storage thereon. Anything that increased this business was clearly within the purview of its incorporation and was necessarily incidental to its business. Indeed, it is well known that a part of the business of cotton warehouses is to encourage and increase their business by advancing money on the cotton stored; and we see no reason why, as a matter of fact, it would not be within the power of the corporation to advance ginning charges on the cotton to the ginner; for this would be, in effect, to advance for the customers who were primarily responsible therefor. Besides, the evidence shows that the warehouse company had received the full benefit of the cotton which had been stored with it by the ginner; and it would be inequitable to allow the company to reap the benefit of the contract with the ginner and then set up the plea of ultra vires. This court has expressed its disapproval of the doctrine of ultra

vires as applicable to private trading corporations and to contracts therewith in which the public has no interest and which are not opposed to public policy, and of which the corporation has received full benefit. *Dublin Fertilizer Works* v. *Carter, 6 Ga. App.* 835 (65 S. E. 1082).

There is some evidence that the contract was not authorized by the corporation. On this point the evidence is in sharp conflict, the general manager testifying that he made the contract for the benefit of the corporation, and that it was ratified by the board of directors. However this may be, it is clear that the corporation received the full benefit of the contract, and should be required to perform its part of the agreement for which it had received full consideration from the plaintiff in the delivering and storing of the cotton ginned by him.　　*Judgment affirmed.*