THOMPSON *et al. v.* THE ETOWAH IRON COMPANY *et al.*

1. The true legal owner of land of which neither he nor any one else is in actual possession cannot maintain a bill or equitable petition to cancel, as a cloud upon his title, deeds and mortgages, although duly recorded, made by strangers, none of whom, so far as appears, ever had possession of the premises or any conveyance or color of title from the State, or from any one connected with the true title, or any one who ever had actual possession. In order for outstanding conveyances to be a cloud upon title, it is necessary that they of themselves, or in connection with alleged extrinsic facts, should constitute an apparent title; that is, one upon which a recovery could or might be had against the true owner were he in possession and relying upon possession alone. Anything which would force him to attack the adverse title, or to exhibit his own, would be a cloud; anything which would not have this effect, would be no cloud.

2. Where the plaintiff fails to make out a case, and the presiding judge, after so deciding, announces that he intends to direct a verdict for the defendant, thus giving the plaintiff an opportunity to take a nonsuit or dismiss his petition, neither of which is done, and the case is then disposed of by directing a verdict, there is no error.

April 17, 1893. Argued at the last term.

Before Judge MILNER. Bartow superior court. July term, 1892.

ALBERT S. JOHNSON, for plaintiffs.

JOHN W. AKIN, for defendants.

LUMPKIN, Justice.

1. The principle upon which equity will lend its aid
to remove a cloud upon title is, that one in the rightful
possession of property is entitled to the full, quiet and
peaceful enjoyment of the same, without present annoy-
ance and harassment, or threatened molestation.   That
timely and adequate protection in this respect should
ever be afforded, the authorities all agree.   It is only as
to what state of· facts and circumstances will present a
case for equitable interference, that there seems to be
any contrariety of opinion.   The granting of the relief
sought has uniformly been regarded as discretionary,
and thus it is that the vast majority of the earlier deci-
sions stand alone upon the individual merits of the cases
in which they were rendered, and, in consequence, are
of but little value as establishing any general rule which
may be universally followed.   For a discussion of the
doctrine, and a review of the cases in which it has been
invoked, see 2 Am. & Eng. Enc. of Law, 298 *et seq.*;
3 Pom. Eq. Jur. §§1397–1399 ; 2 Estee's Pl. (3d ed.)
§2510; 11 Cent. Law Journal, 261.

But despite the want of harmony among the decisions,
the judiciary both of England and of this country ac-
quiesce in the view that one seeking such aid of a court
of equity should affirmatively show : (1) that he cannot
immediately or effectually maintain or protect his rights
by any other course of proceedings open to him ; (2) that
the instrument sought to be cancelled is such as would
operate to throw a cloud or suspicion upon his title,
and might be vexatiously or injuriously used against
him ; and (3) that he either suffers some present injury
by reason of a hostile claim of right, or, though such
claim be not asserted adversely or aggressively, he has
reason to apprehend that the evidence upon which he

relies to impeach or invalidate the same as a cloud upon his title may be lost or impaired by lapse of time.

What is a " cloud " such as equity will undertake to remove has been the subject of much difference of opinion, and is a question upon which many of the courts seem to have agreed to disagree. It is not many years since Mr. Justice Selden, in dealing with the question as presented in the case of Ward *v.* Dewey, 16 N. Y. 519, commented upon the fact that " none of the cases define what is meant by a cloud upon title, nor attempt to lay down any general rules by which what will constitute such a cloud may be ascertained." Some of the later American cases have endeavored to formulate rules which would relieve the matter of difficulty; but to Mr. Justice Field, now on the Supreme Bench of the United States, is probably due the credit of first defining, accurately and precisely, the correct test which should govern in all cases. Discussing at length this question in Pixley *v.* Huggins, 15 Cal. 133, he, being then Chief Justice of California, said: " The true test, as we conceive, by which the question whether a deed would cast a cloud upon the title of the plaintiff may be determined, is this: Would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery? If such proof would be necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed. If the action would fall of its own weight, without proof in rebuttal, no occasion could arise for the equitable interposition of the court; as in the case of a deed void upon its face, or which was the result of proceedings void upon their face, requiring no extrinsic evidence to disclose their illegality. All actions resting upon instruments of that character must necessarily fail." It is from this opinion that the rule stated in 2 Estee's Pl.

(3d ed.) §2510, is taken. In the subsequent case of Lick v. Ray, 43 Cal. 83, Wallace, J., employs much the same language as that used by Chief Justice Field, and says the rule stated is supported by a long line of decisions by that court. Such is the test which has long been recognized by the Supreme Court of Alabama. Rea v. Longstreet, 54 Ala. 291; Lytle v. Sandefur, 9 So. Rep. 260, and cases cited. In Florida, it was first adopted in Davidson v. Seegar, 15 Fla. 671, and has since been recognized and followed by the Supreme Court of that State. Barnes v. Mayo, 19 Fla. 542; Shalley v. Spillman, Id. 500; Benner v. Kendall, 21 Fla. 584. Employing language used in the case last cited, Beach, in his recent work on Modern Equity Jurisprudence (vol. 2, §558), gives the following abbreviated statement of the rule which now obtains: "If it is insufficient to make a *prima facie* case in an action of ejectment, and would fall of its own weight without proof in rebuttal, it does not amount to a cloud, and equitable interference is unnecessary." The reasoning employed in the cases cited cannot but prove convincing that the test announced is the correct solution of the difficulty presented; and in its practical application, we apprehend little or no serious trouble or embarrassment can arise. In view of the above cited authorities, there can scarcely be a doubt that under the terms of our ruling as announced in the first head-note, no instrument which may properly be regarded as a cloud upon title can ever be treated as insufficient in this respect, because we somewhat extend the general rule above stated by holding that a conveyance in itself not enough to constitute a cloud, may, in connection with alleged extrinsic facts, become a cloud. By such extrinsic facts we mean, possession by a former occupant or anything else which, taken to be true, would in connection with the paper in question, give to the holder of the paper

an apparent legal title upon which a recovery could be had. No such extrinsic facts appeared on the trial of the present case. It was shown that Green L. Thompson died seized of land lot No. 257 in Bartow county, which he held by virtue of a grant from the State made in the year 1836. Petitioners derive title through him as his only surviving children. The premises in question are wild and unimproved lands, unoccupied, and in the actual possession of no one. The instruments which are sought to be cancelled as constituting a cloud upon petitioners' title consist of certain deeds and mortgages appearing of record in the office of the clerk of the superior court of Bartow county, the first of which is a deed dated April 13th, 1883. So far as appears, all these conveyances were executed by entire strangers to the original and paramount title. It was neither alleged nor proved that any of the parties named therein ever had possession of the premises, or claimed the same by virtue of any conveyance or color of title from the State, or from any one connected with the true title, or from any one who ever had actual possession or any better right than they. Nor were any special facts and circumstances alleged or shown upon the trial establishing any present or prospective injury to the true owners. Petitioners, by reason of the fact that they have the legal title, now hold constructive possession of the premises. *Rogers et al.* v. *Hoskins,* 15 *Ga.* 276; *Royall* v. *Lisle's lessee, Id.* 545; *Morrison* v. *Hays,* 19 *Ga.* 294; *Stamper et al.* v. *Griffin,* 20 *Ga.* 312. That possession has never, so far as they alleged or proved, in any manner been interfered with, nor are the conveyances in question being used vexatiously to deprive them of the full, peaceable and uninterrupted enjoyment of their rights. Should any of the defendants subsequently unlawfully enter upon the land, no reason appears why they may not be summarily expelled by a proceeding in

ejectment.   If at any future time petitioners themselves desire to enter into actual possession, they may do so without the fear of being successfully resisted or disturbed; for it is clear that in any action of ejectment brought against them by the defendants, such proceeding would "fall of its own weight," without any proof being offered in rebuttal.   It is not shown that petitioners desire to part with their interest in the lands, or that even the most timorous of purchasers have been, or would have reason to be, frightened away by reason of the alleged cloud.   If any cloud at all exists, it is but the translucent mist which adorns a summer's sky—not one which wears upon its face the menace of a threatened storm.

There is a vast distinction between a deed which purports to have derived its existence through the true owner of the original and paramount title, and a deed executed by one unconnected with, and an entire stranger to, such title.   There would be abundant reason to regard with apprehension a conveyance which, though really void because of some latent infirmity, bears apparently the stamp of force and validity, and assumes to trace its way through connecting links back to the fountain head from which flowed the original title.   On the other hand, an instrument which springs from no definite source of right whatsoever can never properly be considered a cloud upon title.   In announcing the test quoted from Pixley v. Huggins, *supra*, Chief Justice Field seems to have had in mind just such a case as the present.   As an illustration of the application of the rule, he says, " every deed from the same source through which the plaintiff derives his real property must, if valid on its face, necessarily have the effect of casting such a cloud upon the title "; but " a conveyance not falling in the chain of title, as from one who never had any connection with the property, would not constitute

a cloud upon the title; no action could be supported upon such a conveyance, even in the absence of rebutting proof, any more than upon so much waste paper." In Rea *v.* Longstreet, 54 Ala. 291, *supra,* Chief Justice Brickell says: "A court of equity will not interfere to prevent or remove a cloud which can only be shown to be *prima facie* a good title by leaving the plaintiff's title entirely out of view. . . . A sale of the land of the true owner as the property of a mere stranger with whom he is not connected, from whom he does not mediately or immediately trace title, cannot cast a cloud on his title." And quoting this language approvingly, it was accordingly held by the same court in the later case of Lytle *v.* Sandefur, 9 So. Rep. 260, already cited, that where the grantor of a deed included therein by mistake lands to which she had no title, and over which she had never exercised any acts of ownership, such instrument would constitute no cloud upon the title of the true owners such as a court of equity would undertake to remove. In the above cited case of Ward *v.* Dewey, 16 N. Y., on page 529, we find: "If an entire stranger assumes to convey the premises, to which he has no shadow of a title, and of which another is in possession, no real cloud is thereby created. There is nothing to give such a deed even the semblance of force. It can never be used to the serious annoyance or injury of the owner. A word of explanation would dissipate the apparent cloud." Similar expressions might be quoted from others of the earlier decisions.

Defining the powers of a court of equitable jurisdiction to cause to be delivered up and cancelled such instruments in writing as operate injuriously to the rights of the persons other than the holders thereof, the statute of this State which authorizes the proceeding *quia timet* expressly enumerates "any instrument which has answered the object of its creation, or any forged or other

iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over complainant's title, or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection." Code, §3232. In none of the essential particulars thus designated do the present complainants make out a case for equitable interference. The conveyances sought to be delivered up and cancelled are not shown to be either " forged " or " iniquitous," nor, as has been seen, do they cast " a cloud over complainants' title." It is not shown that complainants are subjected to any " future liability or present annoyance," nor that the cancellation of the instrument in question is necessary to their perfect protection.

2. Defendants admitted on the trial the existence of the deeds and mortgages described in plaintiffs' petition. No evidence was introduced in defence to the action. After the plaintiffs had closed their case, the court announced that as he could not allow a verdict for plaintiffs to stand, he would instruct the jury to find for the defendants. Counsel for the plaintiffs thereupon asked the court, this being his view of the case, to sustain a demurrer which had been filed by defendants, and dismiss the petition. · The court then announced that he would overrule the demurrer; whereupon counsel for defendants withdrew the same, and under the instruction and direction of the court, took a verdict for defendants. This action on the part of the court plaintiffs assign as erroneous.

As has been shown, the plaintiffs in the court below entirely failed to make out their case. Nothing in defence had been introduced, nor was there any conflict in the evidence. Admitting as true all that the plaintiffs proved, they would not be entitled to a verdict in their favor. The announcement of the court that such was

the conclusion at which he had arrived, presented to the plaintiffs an opportunity either to take a nonsuit or to dismiss the petition on their own motion; neither of which was done. Having failed to avail themselves of any advantage which they might thus have gained, we do not think plaintiffs in error can seriously complain of the direction which the court gave to the case.

*Judgment affirmed.*