JOHNSON & HARROLD *et al. v.* THE MERCANTILE TRUST AND DEPOSIT COMPANY OF BALTIMORE, trustee, *et al.*

Where a railroad company incorporated under the general law procures the legislature to amend its charter by special legislation, and afterwards, with the knowledge of its stockholders and without any hindrance or attempted hindrance from them, exercises the rights and powers ostensibly conferred by such special legislation, and contracts debts and obligations, whether in its original name or by a name which it has assumed and used by reason of supposed legislative authority for changing its name, it is never-

theless a corporation *de jure*, not only with reference to transactions referable to the general law under which it was incorporated, but also as to those referable to the special legislation, whether that legislation be valid or invalid. If it be invalid, acts based upon it would be, at most, *ultra vires;* but in a court of equity they would not on that account be of less binding force upon the corporation and its stockholders, the corporation having by the negative permission and acquiescence of its stockholders held itself out as competent, under color of law, to perform these acts, and by their performance having procured credit and induced creditors to part with their money on the faith of its contract to secure and repay the same. No just application of the doctrine of *ultra vires* will allow a corporation to get value received, and then refuse to pay, whether the refusal be at its own instance or at the instance of its stockholders or a portion of the same.

August 31, 1894.

Equitable petition. Before Judge FISH. Sumter superior court. November term, 1893.

The Americus, Preston & Lumpkin Railroad Company was chartered and organized in 1884, under the general law for the incorporation of railroad companies. Code, §1689(a), *et seq.* In 1886 resolutions were adopted and filed in accordance with this law, authorizing extensions of the road. In 1888 and 1890 special acts were passed by the legislature, amending the charter by changing the name of the corporation to the Savannah, Americus & Montgomery Railway, and conferring certain powers therein stated. See Acts 1888, p. 170; Acts 1890–91, vol. 1, p. 253. The railroad was extended, the capital stock increased, and bonds were issued together with a mortgage to secure them, in favor of the Mercantile Trust & Deposit Co., trustee. On November 30, 1892, on the petition of Alexander *et al.*, receivers were appointed for the S., A. & M. Railway, and the trustee for the bondholders commenced proceedings to foreclose the mortgage. Subsequently Johnson & Harrold and five others, minority stockholders of the A., P. & L. R. R. Co., brought their petition to be allowed to intervene, praying that a separate receiver be ap-

pointed for that company, that the trustee be enjoined from attempting to foreclose the mortgage on the property of that company, that the same be segregated from the property held by the receivers of the S., A. & M. Railway, that an accounting be had, etc. Petitioners alleged that the S., A. & M. Railway had no legal corporate existence, that the special acts in question were unconstitutional and void, and all acts done thereunder, including the execution of the bonds and mortgage, were illegal and of no effect; that petitioners never consented to the taking of the property of the A., P. &. L. Co. by the board of directors of the S., A. & M. Co., and never received any benefit therefrom; that petitioners had applied to the board of directors of the A., P. & L. Co. (who were also the holders of a majority of its stock) to intervene and resist the foreclosure of the mortgage and to take such other steps as might be necessary to recover the property of that company, but they, in collusion with the board of directors of the S., A. & M. Co., refused to do so; that the A., P. & L. Co. was solvent, and on a proper accounting with the directors and stockholders of the S., A. & M. Co., would be amply able to pay its debts, and the S., A. & M. Co. would be due it a large sum, etc. A demurrer to the petition was sustained, and the application of the petitioners for injunction and the appointment of a separate receiver was denied.

J. E. D. SHIPP, H. D. D. TWIGGS and BERNER & BLOODWORTH, for plaintiffs.

BACON & MILLER, GUERRY & SON, GUSTIN, GUERRY & HALL and E. A. HAWKINS, for defendants.

SIMMONS, Justice.

The railroad company was organized under the general law which authorized railroad companies to obtain charters. It therefore became a valid and legal corpo-

ration. It subsequently applied to the legislature for an amendment to its charter, increasing its powers and changing its name. This was done with the knowledge of its stockholders and without any objection on their part to the special legislation. After the amendment it exercised the additional rights and powers conferred upon it, contracted debts and issued bonds in its new name. The fact that the legislature, by the amendments above mentioned, increased its powers and changed its name, did not destroy the original charter nor make two railroad companies where there was one before. It was still a corporation *de jure*, not only in regard to the powers it exercised under the original charter granted under the general law, and the contracts it made thereunder, but also in regard to the powers it exercised and the contracts made by reason of the amendments granted by the legislature. Even if these amendents should be held invalid, the acts done by the corporation thereunder would be at most *ultra vires*. Where a corporation, with the permission and acquiescence of the stockholders, holds itself out as competent to contract and carry on its business under color of law, and procures credit and induces creditors to part with their money on the faith of its contract to secure and pay the same, these contracts will be binding in a court of equity, not only on the corporation but on the stockholders. No application of the doctrine of *ultra vires* will allow a corporation to get value received and then refuse to pay, whether the refusal be at its own instance or at the instance of its stockholders or a portion of the same. These stockholders who are now complaining stood by and saw the powers of this company increased by the legislature and its name changed, and made no objection. They knew for nearly five years that it was performing all the acts of a corporation, running its road, contracting debts and issuing bonds; and now that the

corporation has failed to pay the interest on its bonds and has been put into the hands of a receiver, these stockholders come forward and claim that it was an illegal corporation, and that their part of the property belonging to the original corporation is not bound for these debts. To allow this claim would be manifest injustice, and no court of conscience should allow it.

*Judgment affirmed.*