THE TOWERS EXCELSIOR AND GINNERY CO. *v.* INMAN.

1. Whether one who, in good faith and for value, purchased before its maturity a negotiable promissory note executed by a corporation chartered by a superior court and having under the charter authority to execute such notes, is or is not bound to take notice of the general powers of the corporation with a view to ascertaining whether or not in purchasing the property for which the note was given it acted *ultra vires*, yet where the corporation retained the property for which the note was given, it could not set up the defense of *ultra vires*, even to an action upon the note by the original payee, and much less could it set up this defense to an action thereon brought by a person who had purchased the note as above stated.

2. Where the corporation offered to rescind the contract it had made for the purchase of the property, on the ground that the property was either totally or partially worthless, but made no offer to rescind upon the ground that its action in purchasing was *ultra vires*, the corporation under these circumstances would, as to the inno-

cent purchaser of the note, stand in law just as if it had simply re-tained the property without making any offer to rescind.

3. Irrespective of the various rulings complained of, the verdict upon the substantial merits of the case was manifestly right, and there was no error in refusing a new trial.

July 29, 1895.

Complaint on note. Before Judge. TURNBULL. City court of Floyd county. December term, 1894.

DEAN & DEAN, for plaintiff in error.
ELLIS & GRAY and J. BRANHAM, *contra.*

SIMMONS, Chief Justice.

The Towers Excelsior and Ginnery Company, a private business corporation chartered by the superior court of Floyd county for the purpose of carrying on " the manufacturing of and buying and selling of the product known as 'excelsior,' also the business of ginning cotton and the buying and selling of cotton in lint or seed," purchased from the Van Winkle Gin and Machinery Company an ice machine for the purpose of manufacturing and selling ice. Part of the purchase money was paid in cash, and the purchaser gave its promissory notes, secured by mortgage, for the balance. One of the notes was sold by the payee to Inman before maturity. Inman knew when he purchased the note that it was given for an ice machine. The note was not paid when due, and suit was brought thereon by Inman. The maker filed several pleas, all of which were stricken by the court except the general issue and the plea of *ultra vires;* and the court charged, in substance, that if the contract between the purchaser of the machine and the seller had been executed by the making and delivery of the machine to the purchaser, the latter could not set up the defense of *ultra vires* against the seller, unless it tendered back the machine within a reasonable time or gave some good reason why it could not do so. The court also held that a tender on the ground that the machine did

not come up to the warranty of the seller and was worthless, and not upon the ground that the contract was *ultra vires*, was not such a tender as would authorize the purchaser to set up the defense of *ultra vires*. There was a verdict for the plaintiff, and the Towers Excelsior and Ginnery Company made a motion for a new trial, which was overruled, and it excepted, the rulings above referred to being complained of and error assigned thereon.

1. It was contended by counsel for the plaintiff in error, that although Inman bought the note before maturity, he knew it was the note of a corporation, and was bound to take notice of the corporate powers and ascertain whether the corporation had power to purchase an ice machine or not. It was contended on the other hand that, the maker of the note being a private business corporation, the purchaser of the paper was not bound to inquire into the powers granted by the charter, and that if he bought without any notice of a failure of consideration, he was protected. Under the view we take of the case, it is not necessary to decide which of these contentions is true. Speaking for myself, I am inclined to think that whoever deals with a corporation, whether private or not, must ascertain for himself what powers are granted the corporation by its charter. In this case, however, we think it makes no difference that the corporation had no power to buy the machine. We place our decision upon the broad and just principle, that where a private corporation exceeds its powers and purchases property, takes possession of it, uses and keeps it, the corporation cannot set up the defense of *ultra vires* to avoid paying for it. The contract in question was not strictly an illegal contract; it was not prohibited by the charter. The charter authorized the corporation to make and issue commercial paper, and there was no evidence of illegality on the face of the note. Mr. Jus-

tice Paxson, in commenting upon the facts of a similar case (Wright *v.* Pipe Line Co., 101 Pa. St. Rep. 207), said: " If the . . . company exceeded its corporate powers in the purchase of this stock, can it now repudiate its note in the hands of a holder for value, upon the ground that the transaction out of which it grew was *ultra vires?* The law never sustains a defense of this nature out of regard for a defendant; it does so only where an imperative rule of public policy requires it. The instances are rare in which a corporation or individual has been permitted to set up its own wrong in order to retain both the property and its price. The defendant corporations have obtained the stock which they now allege they had no right to buy, and propose to retain it without payment. It would be difficult to imagine a defense with less merit, and the law would be exceedingly impotent were it to allow it to succeed." Mr. Morawetz, in his work on Private Corporations, lays down the following rule : " After a contract entered into by a corporation has been performed by either of the contracting parties, the fact that the making of the contract involved an unauthorized exercise of corporate power on the part of the company will not constitute a defense to an action brought by the party having performed the contract, to recover compensation for a breach of the contract by the other party." " The reasons upon which the rule above stated is based . . . may be. summed up as follows: The common law prohibition against the unauthorized exercise of corporate powers is founded upon general grounds of public policy, and the legal effect of this prohibition depends upon the requirements of public policy. If a corporation departs from its chartered purposes in violation of the common law prohibition, it may be punished by forfeiture of its franchises at the suit of the State. If a contract is made by a corporation in excess of its chartered powers, either

party to the contract may withdraw, so long as a rescission can be effected without injustice. But after a contract of this character has been performed by either of the parties, the requirements of public policy can best be satisfied by compelling the other party to make compensation for a failure to perform the agreement on his side." (Vol. 2, §691.) " The rule is not based upon the doctrine of estoppel, as has sometimes been suggested. An estoppel *in pais* involves a representation of a fact upon the faith of which an innocent party has been induced to alter his position. The rule referred to, however, applies where both parties to the contract had notice that it was in excess of the chartered powers of the corporation, and therefore prohibited by law. It applies in favor of a corporation which seeks compensation after having performed a contract in excess of its chartered powers, as well as in favor of a party contracting with a corporation, where the latter breaks the contract after the stipulations for its benefit have been performed." *(Id.* §692.) See also *Johnson & Harrold* v. *Mercantile Trust Co.,* 94 *Ga.* 324, 327 ; 5 Thompson's Commentaries on the Law of Corporations, §§6015 *et seq.;* and see *Id.* §§5969, 5971 *et seq.,* and cases cited; Green's Brice's *Ultra Vires,* 729, note *a ;* 27 Am. & Eng. Enc. of Law, *Ultra Vires,* p. 363 ; Dewey *v.* Railroad Co., 91 Mich. 351 ; Bradley *v.* Ballard, 55 Ill. 413 ; 7 Am. Rep. 656. If the corporation cannot retain the property for which its note was given and set up the defense of *ultra vires* as against the original payee, still less can it do so against a person who in good faith and for value purchased the note before maturity.

2. At the trial the defendant sought to prove that it offered to rescind the contract on the ground that there were certain defects in the machine, and that there was a breach of warranty by the vendor. The court excluded the testimony, and held that a tender on any ground other

than that the contract was *ultra vires* would be insufficient to support the plea. We think the court was right in so holding. If the machine was not defective as claimed by the vendee and if there was no breach of warranty, the vendor could properly refuse to accept a tender placed upon the ground that it was defective and that there was a breach of warranty. See 28 Am. & Eng. Enc. of Law, Art. "Waiver," p. 582; also 27 *Id.* 916.

3. There was no error in striking the pleas. The first and second pleas stricken do not allege that Inman had notice of the failure of the consideration, but only allege that he had notice of the consideration. The plea that the note was procured by fraud, even if good against the original vendor, was not good against a *bona fide* purchaser without notice. Other errors complained of in the motion for a new trial are, in the view we take of the case, immaterial. The verdict, under the facts appearing in the record, must necessarily be for the plaintiff, and the court did not err in refusing a new trial.　　　　　　　　　　　*Judgment affirmed.*