4720, 4743.   SAVANNAH ICE COMPANY *v.* CANAL-LOUIS-
IAN'A BANK & TRUST COMPANY *et al.;* and *vice versa.*

1. The charter of a corporation is a contract between the State and the shareholders, and between the shareholders themselves. The State contracts to permit the exercise of the powers granted in the charter, and not to impair the obligation of any contract made in pursuance thereof. The shareholders engage not to exceed the powers conferred upon them by law, and each stockholder, by accepting the charter, agrees with the others not to divert the assets of the corporation to a purpose foreign to the objects of the organization. As to this matter the law makes no distinction between public and private corporations.

2. Corporations are granted no rights and clothed with no powers except those which are expressly conferred by law or the charter, or which arise therefrom by necessary implication.

3. No corporation, whether public or private, organized under the laws of this State, can, in the absence of express charter authority so to do, lend its credit for the mere accommodation of third persons.

4. Authority to make an accommodation indorsement of commercial paper will not be implied from the power to lend or borrow money on such paper and generally to exercise the powers usually incident to corporations under the laws of this State.

5. If a corporation having the power to indorse commercial paper in furtherance of its business should indorse and put such paper in circulation, a bona fide purchaser thereof will be protected, even though the indorsement was made merely for the accommodation of third persons, if he have no notice of this fact.

6. The plaintiff in this case was not a bona fide holder of the note sued on, without notice of the character and purpose of the defendant's indorsement; and the evidence demanded a finding that the contract of indorsement was for the mere accommodation of the maker of the note, and that the indorsing corporation received no benefit from its indorsement.

7. Though one corporation may own all the stock in another corporation, the two do not become merged, but remain separate and distinct legal entities.

8. An ultra vires act of a corporation is one in excess of charter power. A corporation may, like any other person, be estopped to plead the want of authority of an agent to do an act which the corporation had the legal right to perform, but a corporation is not estopped to challenge the legality of an ultra vires contract which is executory, unless some innocent person has been misled to his injury and has parted with something upon the belief that the contract was executed in furtherance of the corporate enterprise. If an ultra vires contract be executed, the corporation can not retain the benefit which it has received and repudiate the contract.

9. The contract of a surety or accommodation indorser, being to pay if the maker does not, is executory until payment by the surety is actually made.

10. A corporation can not ratify a contract which it has no legal power to make.

11. An executory contract of a corporation wholly beyond the scope of corporate power can not be enforced against it by one who at the time the contract was made had notice of its illegality, even though all of the stockholders assented to its execution or ratified it after it was made. This rule is applied whether the corporation be of a public or a private nature, and without reference to whether any public policy is contravened by the contract, or any interests of creditors are injuriously affected by it. The stockholders in a corporation can not substitute their will for the legislative grant of power.

12. The evidence demanded a judgment in favor of the defendant, and it was error to award judgment for the plaintiff.

DECIDED MAY 20, 1913.  REHEARING DENIED JUNE 25, 1913.

Complaint; from city court of Savannah—Judge Davis Freeman. January 27, 1913.

*Osborne & Lawrence,* for Savannah Ice Company.

*W. L. Clay, O'Byrne, Hartridge & Wright,* contra.

POTTLE, J. The Canal-Louisiana Bank and Trust Company sued the Savannah Ice Company, a corporation, upon a promissory note made by the Crescent Ice Company to its own order and indorsed by that company and the defendant. The defendant pleaded that its indorsement was merely for the accommodation of the maker; that it had no charter authority to indorse for accommodation, and that these facts were well known to the plaintiff. A demurrer to this plea was overruled and exceptions pendente lite were filed by the plaintiff. The case was submitted to the judge without the intervention of a jury and he rendered a judgment in favor of the plaintiff. The defendant has filed a bill of exceptions complaining of this judgment, and the plaintiff excepts to the overruling of its demurrer to the defendant's plea. The judgment of the trial judge in favor of the plaintiff was based upon the following facts: The Central Ice Company was incorporated under the laws of New Jersey and organized for the purpose of holding and owning stock in a number of subsidiary companies engaged in the business of the manufacture and sale of ice. It owned all of the capital stock of the Savannah Ice Company except one share issued to each of the directors to qualify them to act as officers of the company. In like manner it owned all the shares except the directors' shares in several other subsidiary companies. It owned two thirds of the stock of the Crescent Ice Company, the other third being held by the Electric Corporation of Boston. Each of these various sub-

sidiary companies had been in the habit of lending its credit to the other companies at various times, in order to aid them in the conduct of their business. The Crescent Ice Company was in need of money to be used in rehabilitating its plant and aiding it in the conduct of its business. The owners of the stock in this company, to wit, the Central Ice Company and the Electric Corporation of Boston, agreed to supply the funds necessary for the purpose,— the Central Ice Company to furnish two thirds and the Electric Corporation one third. A part of the money to be supplied by the Central Ice Company was realized from a note (of which the note sued on was a renewal) for $6,000, dated March 19, 1909, due four months from date, executed by the Crescent Ice Company, payable to its own order, and indorsed by the maker and the Savannah Ice Company by its president, Louis P. Hart. This note was discounted in the regular course of business by the Canal-Louisiana Bank & Trust Company. It was renewed ten times, the principal being reduced somewhat in amount by payments. The note sued on was for $5,000 principal, and was dated October 16, 1911, and became due January 14, 1912. The stockholders and directors of the Central Ice Company and of the Savannah Ice Company were identical, with the following exceptions: R. G. Hopkins and one Mulky were directors and stockholders of the Central Ice Company, but had no connection with the Savannah Ice Company. R. G. Hopkins resigned as a director in both companies in December, 1909, and in the spring of 1910 Joseph A. Bailey succeeded Hopkins as a director in both companies. R. G. Hopkins resigned as a director in the Central Ice Company on May 15, 1911. All of the directors of the Savannah Ice Company except Hill were directors in the Crescent Ice Company, and, in addition, there were three directors who had no connection with the Savannah Ice Company. Hart, the president of both the Central Ice Company and the Savannah Ice Company, testified that every director and stockholder in the Savannah Ice Company and every director in the Central Ice Company, except Mulky, knew of the manner in which the original note discounted with the bank was indorsed and discounted. On May 25, 1909, at a stockholders' meeting of the Savannah Ice Company, a resolution was passed ratifying, approving, and confirming all of the acts of the board of directors for the past year. On May 3, 1910, and again on April 13, 1911, similar

resolutions were passed by the stockholders of the Savannah Ice Company, and at the last meeting all the acts of the officers of the company in making indorsements in the name of the company were ratified and confirmed. The Savannah Ice Company was incorporated for the purpose of buying, selling, and manufacturing ice, beer, soda and mineral waters and generally to conduct a wholesale or retail jobbing and commission business in all kinds of personal property. The charter authorized the company, amongst other things, to "lend or borrow money on note, bill, bond, pledge, deed, mortgage, or other obligations and liens," and generally to exercise such powers as are usually incident to corporations under the laws of this State.

The charter of a corporation, whether granted directly by the General Assembly, or by the executive or judicial department of the government under authority delegated by the General Assembly, is a contract between the State and the shareholders, and between the shareholders themselves. The obligation of the State is that it will permit the shareholders to exercise the powers and enjoy the privileges granted in the charter, and that the contracts of the corporation, made in pursuance of the charter, will not be impaired by the State. The shareholders on their part contract with the State that they will not exceed the powers granted in the charter, and agree with each other that they will devote the assets of the corporation to the objects and purposes of the charter and not otherwise. *Central Railroad Co.* v. *Collins,* 40 *Ga.* 583, 624; *Midland City Hotel Co.* v. *Gibson,* 11 *Ga. App.* 829 (76 S. E. 600). No principle is better settled in this State than that the stockholders in a corporation are granted no rights and clothed with no powers except such as are expressly set forth in the charter or as arise therefrom by necessary implication. 3 Enc. Dig. Ga. Rep. 641. This principle has been embodied in the statutory law of this State in reference to corporations chartered by the superior court. "Corporations thus created may exercise all corporate powers necessary to the purpose of their organization, but shall make no contract, or purchase or hold any property of any kind, except such as is necessary in legitimately carrying into effect such purpose, or for securing debts due to the company." Civil Code, § 2823 (5). Under the present law of this State, corporations exercising a public or quasi-public function are chartered by the Secretary of State,

except municipal corporations which are chartered directly by the General Assembly. All other corporations are chartered by the superior court. The primary object of every private corporation, other than charitable or eleemosynary institutions, is private gain for its stockholders. The contract which every shareholder makes with the others is that the funds and property of the corporation will be used solely for the benefit of the shareholders and in the manner set forth in the charter. It is not open to serious argument that, in the absence of charter authority, a corporation has no right to lend its credit for a purpose which will not promote the objects and purposes of the corporation. *First National Bank* v. *Monroe,* 135 *Ga.* 614 (69 S. E. 1123, 32 L. R. A. (N. S.) 550); *Houser* v. *Farmers' Supply Co., 6 Ga. App.* 102 (64 S. E. 293). There is nothing in the charter of the Savannah Ice Company which either expressly or by necessary implication authorizes it to lend its credit for the mere accommodation of third persons. No such power will be presumed to have been granted unless the language of the charter requires such a construction. It is the duty of the governing authorities of a corporation to devote its assets for the benefit of its stockholders; and it would require express language in a charter to authorize a court to hold that the corporation had the power to divert its assets to a purpose wholly foreign to the business which the corporation was organized to carry on, and in a manner detrimental to the interests of the stockholders. The assets of a corporation constitute a trust fund to be administered for the benefit of the shareholders and creditors of the corporation. Without express authority so to do, the officers of a corporation have no power to use its funds for any other purpose.

The Supreme Court of this State has held that a bona fide purchaser for value of a note indorsed by a corporation for accommodation only, and without notice of the real character and purpose of the indorsement, will be protected even though the corporation had no authority to make the indorsement. *Jacobs Pharmacy Co.* v. *Southern Banking & Trust Co.,* 97 *Ga.* 573 (25 S. E. 171). That decision is based upon the theory that, since a corporation has the power to make and indorse negotiable instruments in the course of its business and in furtherance of its enterprise, one who acquires for value such an instrument, made or indorsed by a corporation, has the right to assume that it was executed or negotiated in due

course of business and not for accommodation. The record in the present case, however, does not justify the conclusion that the plaintiff bank was an innocent purchaser of the note sued on. The note was made by the Crescent Ice Company payable to its own order, and this fact alone was enough to suggest to the bank that the Savannah Ice Company probably had no interest in the proceeds of the note. But in addition to this, before the original note was discounted by the bank, the Crescent Ice Company, acting through its president, Louis P. Hart, wrote to the bank a letter stating that the ice company applied for a loan of $6,000 for four months, upon a paper which would be indorsed by Louis P. Hart and the Savannah Ice Company, with the understanding that not less than 15 per cent. of the loan would be kept on deposit with the bank, and that at least 25 per cent. of it would be paid on maturity. Enclosed with this letter was a copy of the last financial statement of the Savannah Ice Company. A short while after this letter was written the loan was made, and the money was deposited in the bank to the credit of the Crescent Ice Company. The bank was chargeable with notice of the law of this State which prohibits a corporation from making accommodation indorsements, and therefore knew that the Savannah Ice Company had no power to lend its credit in the absence of express charter authority so to do. Certainly the bank was not justified in assuming that charter authority had been granted. On the contrary, persons dealing with a corporation must assume that it has no power to use its assets or pledge its credit except to subserve the interests of the stockholders and the enterprise which the corporation is authorized to carry on. The bank knew that the principal business of the Savannah Ice Company was the manufacture and sale of ice. Its very name imported this. When the bank accepted the indorsement of this corporation and advanced its money on the faith of it, it did so with the knowledge that the corporation had no power to make the indorsement.

It is also contended that the indorsement of the Savannah Ice Company was in due course of business and for its own benefit, and not for the mere accommodation of the Crescent Ice Company. It is urged that the Central Ice Company and the Savannah Ice Company were substantially one and the same, that the money supplied by the bank was directly for the benefit of the Central Ice Company,

and that for this reason the advancement of the money inured to the benefit of the Savannah Ice Company. A corporation is a legal entity, separate and distinct from the stockholders. A corporation represents all of the stockholders, but for many purposes is regarded as a distinct entity. Hence, though one person should acquire all the stock in a corporation, the individual shareholder and the corporation would still in law be two separate and distinct persons. And so one corporation may own all the stock in another corporation, but the two corporations do not become merged, but remain separate and distinct entities. See *Waycross Air-Line Railroad Co.* v. *Offerman & Western Railroad Co.,* 109 *Ga.* 827 (35 S. E. 275) ; *Garmany* v. *Lawton,* 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207). Although it appears from the record that at the time the original note was discounted at the bank, the Central Ice Company owned all of the stock in the Savannah Ice Company except the directors' shares, still in law the two corporations were as separate and distinct as if the Central Ice Company had owned none of the stock of the Savannah Ice Company. And the latter company had no more power to lend its credit for the accommodation of the Central Ice Company than it did for any other person. So that, even if the indorsement could be treated as having been for the benefit of the Central Ice Company, it was none the less ultra vires.

It is next insisted that the indorsement should not be regarded as merely for accommodation, because it was made in accordance with a system of financing the subsidiary companies which the parent company had been conducting for many years. It is argued that the holding company was really the head, having the will, and the subsidiary companies were but the members of the body acting in response to this will; that in the past, other members of this body had loaned their credit for the benefit of the Savannah Ice Company, and that the ice company's indorsement was really in return for similar favors of this kind which had been extended to it. The fact that these other companies had exceeded their charter powers and indorsed for the Savannah Ice Company and for each other could not render legal an act of the Savannah Ice Company in excess of its charter power. If two corporations should exchange indorsements in order to raise the same amount of money to be applied for the benefit of each, the one indorsement might be re-

garded as a consideration for the other; though it has been held that a corporation would not be liable even though its indorsement be on an independent consideration. Rogers v. Jewell Belting Co., 184 Ill. 574 (56 N. E. 1017). But this is not the case here. The record discloses that the Savannah Ice Company received absolutely no present benefit from its indorsement, nor promise of future benefit in consideration for the indorsement. And unless it obtained one or the other, its indorsement must be treated as merely for accommodation.

Many of the adjudicated cases speak of two classes of ultra vires acts of corporations,—one which is in excess of charter power, and the other where an officer of a corporation undertakes to do an act within the charter power which he has no authority to perform. In reality it is a misnomer to speak of the latter character of acts as ultra vires, because such acts are within the power of the corporation, and are simply in excess of the authority of the officer or agent attempting to perform them. Strictly speaking, an ultra vires act of a corporation is one which it has no power under its charter to perform. Some confusion has arisen in the decided cases on account of what seems to be a misapprehension of the distinction between these two classes of acts. Where a corporation has charter authority to do an act, it will always be estopped to question the authority of one whom it held out as having the power to act for it, or whose act has been ratified by the corporation after its performance. *Hazlehurst v. Savannah &c. R. Co.*, 43 Ga. 14, 55; *City Fire Ins. Co.* v. *Carrugi*, 41 Ga. 660, 673. A corporation can act only through an agent, and the law of principal and agent is applicable to it in substantially the same way as it is applied to natural persons. In reference to acts which are strictly ultra vires, the Supreme Court of the United States holds broadly that neither consent of nor ratification by all the stockholders can estop a corporation from pleading its want of power. Thomas v. Railroad Co., 101 U. S. 71, 83 (25 L. ed. 950). In First National Bank of Concord v. Hawkins, 174 U. S. 364 (19 Sup. Ct. 739, 43 L. ed. 1107), the court said: "A contract of a corporation which is ultra vires in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void and of no legal effect. The objection

to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract can not be ratified by either party, because it could not be authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of a right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with; but when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped by assenting to it, or by acting upon it, to show that it was prohibited by those laws." See also 4 Enc. U. S. Sup. Ct. R. 747. In this State, however, the strict rule above announced has been modified to some extent, so that with us the rule is that the courts will not interfere with an ultra vires contract of a corporation which has been executed, but will refuse to aid in the enforcement of such a contract when it is merely executory. See *Harriman* v. *First Bryan Baptist Church,* 63 *Ga.* 186 (36 Am. R. 117) ; *Johnson* v. *Mercantile Trust Co.,* 94 *Ga.* 324 (21 S. E. 576) ; *Towers Excelsior & Ginnery Co. v. Inman,* 96 *Ga.* 506 (23 S. E. 418) ; *Kohlruss* v. *Zachery,* 139 *Ga.* 625 (77 S. E. 812) ; *Cozart* v. *Georgia R. Co.,* 54 *Ga.* 380. This view seems to be in accordance with modern authorities. 1 Clarke & Marshall, Private Corporations, § 206. It is very clear that the contract of indorsement was executory. The corporation engaged to pay if the maker did not; and, until it complied with its engagement, its contract was executory.

The serious question in the present case, and the one with which we have had most difficulty, is whether consent of all the stockholders of a private corporation to the performance of an ultra vires act, upon the faith of which another has parted with his money, would estop the corporation from pleading the illegality of the act. Of course, it would estop the individual stockholders who consented. And it is argued with a great deal of force that, since the corporation represents and acts for the stockholders, if all of them are estopped the corporation should likewise be estopped, unless the interest of the public or of creditors of the corporation

are injuriously affected. The record is silent as to whether the Savannah Ice Company was in debt at the time it lent its credit to the Crescent Ice Company. It might well be said that one seeking to enforce an ultra vires act of a corporation carries the burden of showing that there were no creditors whose interests might be adversely affected, and also that the act was not in violation of any public policy. But we prefer to base our decision upon the broader ground that the consent of all the stockholders will not estop the corporation from challenging the legality of an act which is wholly beyond the scope of its charter powers. Nor does it occur to us that it would be necessary for the State to intervene where the act is in violation of some public policy, or that creditors should appear and directly challenge the legality of the act upon the ground that it injuriously affected their interests. It is the duty of a corporation to urge, in a suit upon an ultra vires contract, any defense which either the State or creditors might set up. Corporations are, and should be, held to a strict accountability for their acts. In return for the privileges conferred and the exemptions granted them by law, the shareholders should see that no act is performed in the name of the legal entity which is beyond the legitimate scope of the powers granted in the charter. The decided weight of authority in this country is that consent of the stockholders can not validate an act wholly beyond the corporate powers. 1 Clarke & Marshall, Private Corporations, § 182, and cases cited; Park Hotel Co. v. Fourth Nat. Bank, 86 Fed. 742 (30 C. C. A. 409); 4 Enc. U. S. Sup. Ct. R. 746, and cases cited. The general rule is thus tersely stated by Judge Sanborn in Park Hotel Co. v. Fourth National Bank, supra: "A contract which a corporation has no power to make, it has no power to ratify and no power to estop itself from denying." A contrary view was taken by the Court of Appeals of New York in the case of Martin v. Niagara Falls Mfg. Co., 122 N. Y. 165 (25 N. E. 303), where it was held that where an accommodation indorsement by a corporation was ratified by the stockholders and no other rights intervened, the corporation would be bound. See, also, Perkins v. Trinity Realty Co., 69 N. J. Eq. 723, 731 (61 Atl. 167); Murphy v. Arkansas Land Co., 97 Fed. 723. Using these decisions as authority, Cook, in his work on Corporations, states the law as follows: "The theory of a corporation is that it has no powers except those expressly given or necessarily

implied. But this theory is no longer applied to private corporations. A private corporation may exercise many extraordinary powers, provided all of its stockholders assent and none of its creditors are injured. There is no one to complain except the State, and, the business being entirely private, the State does not interfere. Thus, fifty years ago the courts would summarily have declared it illegal for a business corporation to become an accommodation indorser of commercial paper. But to-day there is no rule of public policy which prohibits a private corporation having a capital stock from becoming the accommodation indorser of commercial paper, provided such indorsement is made with the knowledge and assent of all the directors and stockholders, and provided corporate creditors are paid." 1 Cook on Corp. (6th ed.), § 3. In *Augusta R. Co.* v. *City Council,* 100 *Ga.* 701, 717 (28 S. E. 126), the foregoing extract from Cook was quoted, but without either approval or disapproval, and there is nothing in the facts of that case which called for a decision of the question now under consideration.

In *Dublin Fertilizer Works* v. *Carter,* 6 *Ga. App.* 835 (65 S. E. 1082), in a discussion of the subject of ultra vires acts of corporations, the court said: "None of the reasons upon which the doctrine of ultra vires is based apply to this contract. It is simply a contract made by a private trading corporation with an individual, opposed to no public policy, prohibited by no law of the State, and in which the public has no interest whatever; and to strike down a contract of this character, as being ultra vires, it seems to us would be to encourage dishonesty and a want of fair dealing as to private contracts, without subserving any public benefit. We think, as above stated, that the contract now under consideration was not an ultra vires contract, but even if it was, under the facts of this case it would seem to be inequitable and unjust to permit such a defense." In that case it was held that the act in question was not ultra vires, and therefore the discussion as to the rule which would have prevailed had the act been beyond the corporate power was obiter. It is to be observed that in the above-quoted extract from Cook the author says that fifty years ago the courts would summarily have declared it illegal for a business corporation to become an accommodation indorser on commercial paper, but that to-day, if all the stockholders assent and creditors are not injured, such

an act is held to be legal. The law of Georgia on that subject has been the same for many years. The statute expressly commands that the corporation shall make no contracts except such as are necessary in legitimately carrying into effect the objects and purposes of the organization, or for securing a debt due to the company. Any contract, therefore, which comes within this statutory prohibition is void, and no consent or ratification can make an act valid which is absolutely void ab initio. In our view of the matter, stockholders in a corporation can not by consent set aside and render void a limitation placed by law upon the corporate action. If they could, it would serve no good purpose to limit the powers of a corporation. The shareholders could receive all the benefits of incorporation and not be subject to any of the restrictions imposed upon them by law. See Steiner v. Steiner Land Co., 120 Ala. 128 (26 So. 495, 497). If the view contended for by the defendant in error be sound, then a mercantile corporation, with the consent of all its stockholders could embark in a manufacturing business or in other enterprises wholly foreign to the objects and purposes expressed in the charter. A corporation as an entity has no such power, and such power can not be conferred upon it by its shareholders. If they themselves engage in an enterprise wholly foreign to the organization, they would be liable as individuals or as partners, but they can not by engaging in ultra vires acts bind the corporation as a legal entity separate and distinct from the shareholders. We do not mean to say that a corporation can never be estopped, for there are instances where it is; such as where a bona fide purchaser acquires an obligation of a corporation which on its face appears to have been within the corporate power. But with this exception and possibly one or two others, a corporation as such can never be estopped to plead the illegality of an act of its officers or agents wholly beyond the scope of the corporate business. The facts in the present case are practically undisputed, and the defendant was entitled to a judgment. The court properly overruled the demurrer to the defendant's plea, as it set forth a defense and was sufficient in form.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed.*