17995. SOUTHERN EXCHANGE BANK *v.* FIRST NATIONAL BANK OF DUBLIN.

1. A national bank has implied power to make a valid and binding contract of guaranty when the contract is made for its own benefit.

2. While a national bank is not estopped from denying the legality of an ultra vires contract which is executory, yet if such a contract be executed, the bank can not retain the benefits it may have received under the contract and repudiate the contract.

DECIDED JANUARY 10, 1928.

Action on contract; from Laurens superior court—Judge Graham presiding. January 26, 1927.

Application for certiorari was made to the Supreme Court.

The Southern Exchange Bank brought an action against the First National Bank of Dublin, for a breach of contract. The material parts of the plaintiff's petition as amended (formal parts omitted) were as follows:

Banks and Banking, 7 C. J. p. 815, n. 95; p. 834, n. 81.

"Georgia, Laurens County. The petition of the Southern Exchange Bank, a corporation of said State and County, shows the following: (1) That the First National Bank of Dublin is a national banking corporation under the laws of the United States of America, having its residence in said county. (2) That on October 19, 1921, the First National Bank of Dublin, by, and through its directors as above mentioned, made, executed, and entered into a contract with your petitioner, a copy of which is hereto attached, marked Exhibit A, and by reference thereto is made a part hereof. (3) It was on said date well known to petitioner, to the First National Bank of Dublin, and to all of its directors, that the Citizens Bank, a banking corporation of said State and county, was in failing circumstances and was liable to close its doors, whereby loss would be suffered by its depositors, which would very likely result in the withdrawal of deposits from the Southern Exchange Bank and the First National Bank, and in fact a probable run on each of said banks would cause them great loss, injury, and damage. (4) In order to prevent the loss, injury, and damage to petitioner and the First National Bank of Dublin as alleged in the preceding paragraph, the contract hereto attached was in good faith executed by and between petitioner and said defendant bank, and has been in good faith fully performed by the petitioner. By reason of the execution and performance by the plaintiff of the aforesaid contract, the banking situation at Dublin was improved and the threatened run on the defendant was averted. *The sole and entire consideration which induced the defendant to sign said contract was its own protection against injury and loss in the conduct of its banking business as alleged.* (Italics ours.) (5) On said date, between petitioner, said defendant bank, and its directors, . . it was agreed that petitioner should take charge of the assets of all kinds, except stockholders' liability of the said Citizens Bank, and liquidate the same for a period of three years; and the petitioner should pay as due or demanded the liabilities of said bank, except liabilities to stockholders. If at the end of said liquidation period petitioner had collected enough to reimburse itself together with expense of liquidation and legal interest, the remainder should be paid over to said Citizens Bank. (6) It was further agreed that if at the end of said liquidation period petitioner had not collected enough

from the assets of said Citizens Bank to reimburse itself with expense and interest, the First National Bank of Dublin should then and there be liable to petitioner for one half of its loss, but in no event to exceed $14,000. In determining its loss at the end of said period of liquidation the assets of said Citizens Bank should be appraised by a board of appraisers appointed by petitioner and said defendant bank. (7) At the end of said liquidation period petitioner sustained a loss far in excess of $28,000, to wit the sum of —— dollars. (8) At the end of said liquidation period when petitioner had a right to call upon the First National Bank of Dublin for a settlement of its duty under said contract and on demand therefor, said bank, by and through its directors, . . . informed petitioner that it would not perform its obligations under said contract, for the reason that it had been advised by the national banking authorities that said contract was illegal and was not binding upon said bank. No other reason was given for its dishonor of its obligation under said contract. (9) Said First National Bank of Dublin did not at any time during said three-year period of liquidation and while petitioner was performing its obligations to the letter notify petitioner of its intention to repudiate and dishonor its obligations as aforesaid. (10) Plaintiff was induced to take over the assets of the Citizens Bank and assume its liabilities, as set out in paragraphs two to eight of its petition, by agreement of the defendant, the First National Bank, to guarantee it against loss, up to $14,000, on account of said transaction. (11) The agreement set out as Exhibit A to plaintiff's petition was made between the plaintiff and the defendant, the First National Bank, before plaintiff agreed to assume the liabilities and take over the assets of said Citizens Bank, and was a substantial and material part of the consideration which induced it to do so."

The contract referred to and attached as Exhibit A to the petition (formal parts omitted) was as follows:

This agreement, executed in duplicate this the 19th day of October, 1921, by the Southern Exchange Bank, a banking corporation under the laws of Georgia and a resident of Laurens County, as party of the first part, and the First National Bank of Dublin, a national banking corporation under the laws of the United States of America and resident of Laurens County, Georgia, as party of

the second part, witnesseth that whereas the Southern Exchange Bank has taken over the assets and assumed the liabilities of the Citizens Bank, a banking corporation, resident of Laurens County, Georgia, as of this date, and whereas it is to the mutual benefit and interest of the parties hereto that the First National Bank of Dublin render such aid and assistance to the Southern Exchange Bank as it deems proper, now therefore, for and in consideration of the mutual benefits to be derived from the terms of this contract, the parties hereto, by and through their proper officers, do hereby contract, covenant, and agree as follows: (1) The party of the second part agrees and covenants to guarantee and indemnify the party of the first part against a loss in the amount hereinafter mentioned, which may grow out of a failure of the assets of the Citizens Bank, to meet the liabilities of the said Citizens Bank, assumed by party of the first part, but in no event is the amount of liability on the part of the party of the second part to party of the first part to be in excess of $14,000, and to be subject to all the terms, conditions, and limitations of this agreement. It is understood that the liability of the party of the second part to the party of the first part shall be a liability for its part of the loss sustained by party of the first part arising out of those liabilities of the Citizens Bank which are assumed by party of the first part and which are as follows: bills payable, deposits, both time and demand, outstanding cashier's checks, certified checks, unremitted collections and bank overdrafts, but not stockholders' statutory liability. - (2) It is expressly understood and agreed that no liability for any amount whatever shall accrue under this agreement, until the expiration of three years from the date hereof, and if at any time during said three years from the date of this contract the said party of the first part shall realize from the assets of the Citizens Bank, enumerated above, then and in that event there shall be no liability whatever under this contract. (3) The party of the first part shall have three years from the date of this contract to liquidate and to realize upon the assets of the Citizens Bank, and if at the end of such period of time the liabilities of the Citizens Bank have not been paid, and should the Southern Exchange Bank be liable therefor, then the liability of the First National Bank under this contract shall be fifty per cent. of the amount ascertained for which the Southern Exchange Bank

will be liable to the creditors of the Citizens Bank, but said fifty per cent. shall in no case exceed the sum of $14,000, which sum is made the maximum liability hereunder.   (4)   It is understood and agreed that if at the expiration of the period of time referred to there should be any liability upon the part of the party of the first part to the creditors of the Citizens Bank, such liability, for the purpose of this contract, shall be only that amount in excess of the value of the assets of the Citizens Bank remaining in the hands of the party of the first part, and the value of such assets shall be arrived at by the parties of this contract each appointing a committee of two, and if said committee can not agree on said value, then said committee shall select a fifth man, and the finding of said committee as constituted shall be binding upon the parties hereto, as to the value of said assets.   The party of the second part reserves the right to take over the assets of the Citizens Bank remaining at such time upon the valuation so placed, but in no way obligates itself so to do.   In arriving at the value of the assets as above provided, the cash value of the liability of the stockholders of the Citizens Bank under the statutory liability provided by law shall be arrived at and assessed and included in the assets of the Citizens Bank.   (5)   The ascertained liability existing under this contract upon the part of party of the second part at the time of its accrual is to be paid party of the first part as follows: $2,000 in cash at the time of the accrual and ascertainment of said loss, and the balance of said loss to be represented by notes maturing twelve months from the date of said cash payment and annually thereafter until said indebtedness is met in full, said notes to be for the sum of $2,000 each, or such part thereof as may be necessary to close the liability, to be without interest, and to be stamped upon their face as non-negotiable and subject to the terms of this contract.   (6)   Party of the second part agrees that upon the ascertainment and accrual of its liability under this contract, it will advance and lend to the party of the first part said amount, and the party of the first part is to execute to party of the second part thereof its promissory notes without interest and stamped nonnegotiable and subject to all terms of this contract.   These notes are to be for the same amount and to mature upon the same date as the notes of party of the second part to party of the first part, referred to in paragraph 5 of this agreement.   It is agreed that

the notes executed by the party of the second part to the party of the first part shall be paid by crediting upon the notes of the party of the first part the amounts due, and as due under this contract, and upon said application being made, party of the first part is to return to party of the second part notes of an equal amount which may be held by party of the first part and signed by party of the second part and executed under this contract. (7) The liability under this contract is to the Southern Exchange Bank solely, and is not transferable or assignable, and should said bank be consolidated or merged with any bank or banks, or liquidated, this contract shall be null and void, unless said Southern Exchange Bank shall continue its corporate existence. If such consolidation, merger, or liquidation occurs after liability becomes fixed under this contract, party of the second part shall have the right to take over the assets of the Citizens Bank in sufficient [amount?] to protect any liability according to its pro rata rights under the terms of this contract, or at its option it may allow the successors or assigns of party of the first part to complete the final disposition of such assets of the Citizens Bank. (8) All notes and accounts and other assets of the Citizens Bank which are extended or renewed, and in such extension or renewal are made payable to the Southern Exchange Bank, are to be applied to Southern Exchange Bank in the liquidation of the indebtedness of the Citizens Bank, and party of the second part is to have credit for such items in arriving at the amount of final liability. (9) Party of the second part is to have access at all times to the records of party of the first part in so far as they relate to or bear upon the affairs of the Citizens Bank, and party of the first part agrees to furnish to party of second part a monthly condensed statement showing the amount of assets of the Citizens Bank collected and how applied, it being the intention of this paragraph that party of the second part shall be kept fully informed at all times as to the exact standing of the affairs of the Citizens Bank.

The defendant bank demurred to the petition on the ground that the contract attached thereto affirmatively appeared to be a contract of guaranty for the benefit of third persons, and therefore was "ultra vires on the part of this defendant." The court sustained the demurrer and dismissed the case, and the plaintiff excepted.

*Hightower & New, John S. Adams, Thomas W. Hardwick,* for plaintiff.

*Burch & Daley,* for defendant.

BROYLES, C. J.    (After stating the foregoing facts.)

1.    It is well settled by numerous and repeated decisions of all courts that a national bank can not bind itself by a contract of guaranty made solely for the benefit of another.   However, it is equally well settled that a contract of guaranty made by such a bank for *its own benefit* is valid and binding and is not ultra vires. The power to make such a contract is one of the implied or incidental powers arising from the express or specific powers granted to national banks by the provisions of section 5136 of the Revised Statutes of the United States.   Under that section a national bank has all the incidental powers to carry on the banking business, and the petition in the instant case alleges, in substance, that the contract in question was made to protect and preserve the banking business of the defendant bank and to save it from a probable monetary loss and financial ruin.   See, in this connection, People's Bank *v.* National Bank, 101 U. S. 181 (25 L. ed. 907) ; Cochran *v.* United States, 157 U. S. 286, 297 (15 Sup. Ct. 628, 39 L. ed. 704) ; Schofield *v.* State National Bank, 97 Fed. 282 (3) (38 C. C. A. 179).

2.    Moreover, even if it be conceded that the contract in question was ultra vires on the part of the defendant bank, under the facts set forth in the petition and the allegations therein showing that the plaintiff bank had fully performed its part of the contract, and that by reason of such performance a substantial benefit had accrued to the defendant bank, which benefit it still retained, the defendant bank is estopped from setting up such a defense.   People's Bank *v.* National Bank, supra; National Bank *v.* Graham, 100 U. S. 699 (25 L. ed. 750) ; *Johnson* v. *Mercantile Trust &c. Co.,* 94 *Ga.* 324 (21 S. E. 576) ; *Towers Excelsior &c. Co.* v. *Inman,* 96 *Ga.* 506, 509 (23 S. E. 418) ; *Bank of Garfield* v. *Clark,* 138 *Ga.* 798 (2), 801, (76 S. E. 95) ; *Savannah Ice Co.* v. *Canal-Louisiana Bank &c. Co.,* 12 *Ga. App.* 818 (8) (79 S. E. 45).

It follows from the foregoing rulings that the petition in this case sets out a cause of action and that the court erred in dismissing it on demurrer.

*Judgment reversed.    Luke and Bloodworth, JJ., concur.*