S11A0310. DAY v. NU-DAY PARTNERSHIP, LLLP.
(711 SE2d 689)

MELTON, Justice.

At the time that Lon and Norma Day married in 1992, Lon had three adult children from a prior marriage, Lee, Don, and Nancy. In December 2001, Lon created Nu-Day Partnership, LLLP (hereinafter "Nu-Day"), a family limited partnership that had the purpose of owning and managing property. Lon also created another company, LLD Management, to serve as the sole general partner of Nu-Day, and Lon, along with his three children, were to serve as the limited partners of Nu-Day. Although Lon was originally listed as occupying all of the officer positions of LLD Management, on December 27, 2001, he appointed Don to the position of President and Nancy to the positions of Secretary and Treasurer. The next day, Lon executed documents that transferred all of his interest in LLD Management to Don and Nancy, leaving Don and Nancy as the sole owners of the general partner of Nu-Day. In 2003, Lon transferred certain property located on Bishop Street in Atlanta to Nu-Day (the "Bishop Street property").

Almost five-and-a-half years after he had transferred all of his

interest in LLD Management to Don and Nancy, Lon claimed that the transfer of all of his interest in the company to his children in 2001 was an ultra vires act. He then purported to reallocate the Bishop Street property by unilaterally transferring it from Nu-Day to himself and from himself to his wife, Norma, in April 2007. Through Lon's children, Nu-Day filed an action against Norma in the Superior Court of Fulton County for, among other things, quiet title in an attempt to clarify that Nu-Day was still the owner of the Bishop Street property. The trial court granted Nu-Day's motion for summary judgment with respect to its quiet title claim, prompting Norma to appeal. For the reasons that follow, we affirm.

1. Norma contends that Lon's 2001 transfer of his interest in LLD Management to his children was an ultra vires act and therefore void. This is incorrect.

In the instant case, an ultra vires act, by definition, would be "[a]n act . . . [that] is beyond the scope of the powers granted by law to [a] *corporation,* so that it is not in the power of the *corporation* to perform it under any circumstances." (Emphasis supplied.) *Georgia Granite R. Co. v. Miller,* 144 Ga. 665 (87 SE 897) (1916). See also *Savannah Ice Co. v. Canal-Louisiana Bank & Trust Co.,* 12 Ga. App. 818, 825 (79 SE 45) (1913) (An ultra vires act is an "act of a *corporation* [that the corporation] has no power under its charter to perform") (emphasis supplied). Thus, ultra vires acts have nothing to do with the actions of an individual who simply chooses to transfer his own interest in a company to other individuals, as such actions have nothing to do with the corporation itself acting beyond the scope of its legal authority. See generally, e.g., *Savannah Ice Co.,* supra. See also OCGA § 14-2-304 (b) (outlining manner in which validity of *corporate* actions may be challenged as ultra vires). Norma's argument to the contrary is without merit.

Moreover, the record indicates that Lon clearly intended to, and did, in fact, execute legal documents that transferred all of his interest in LLD Management to his children, Don and Nancy, in December 2001, and Norma can point to nothing in the record that would have made this transaction void at the time that Lon entered into it. Indeed, Norma's argument that the 2001 transaction was somehow void because Lon did not register the transaction with the Securities and Exchange Commission is without merit, as the type of transfer made by Lon has been specifically excluded from the registration requirements of the Securities Act of 1933. 15 USC § 77d (2) ("transactions by an issuer [of shares] not involving any public offering" are exempted transactions under Securities Act of 1933). Furthermore, there is nothing in the record to show that, over five years after Lon transferred his interest in LLD Management to his children, there was something legally infirm about the initial trans-

fer in 2001 or that it was not his intent in 2001 to transfer his interest in LLD Management to his children. Therefore, the trial court was correct to uphold the 2001 transfer of all of Lon's interest in LLD Management to Don and Nancy, leaving them as the sole owners of the only general partner of Nu-Day.

2. Because Lon had no ownership interest in LLD Management as of December 2001, it is axiomatic that he had no authority to transfer the Bishop Street property owned by Nu-Day to his wife, Norma, in 2007. See, e.g., *Thompson v. Etowah Iron Co.*, 91 Ga. 538, 544 (17 SE 663) (1893) ("[W]here the grantor of a deed include[s] . . . lands to which [he] ha[s] no title, and over which [he] ha[s] never exercised any acts of ownership, such instrument would constitute no cloud upon the title of the true owners"), overruled on other grounds, *Seymour v. Seymour*, 210 Ga. 49 (77 SE2d 433) (1953). See also *Pindar's Georgia Real Estate Law and Procedure*, 6th ed., § 25-7 ("A deed executed by a grantor without title . . . does not constitute even an appearance of title"). Accordingly, the trial court properly granted summary judgment to Nu-Day on its quiet title claim.

*Judgment affirmed. All the Justices concur.*

### DECIDED JUNE 13, 2011.

*Allison B. Salter, John F. Salter, Jr.*, for appellant.
*David D. Rawlins, Randy M. Wells, Gaslowitz Frankel, Craig M. Frankel, Robert P. Marcovitch, Brian M. Deutsch*, for appellee.