## EQUITABLE MANUFACTURING COMPANY *v.* DAVIS.

1. The clerk of the district court of Johnson City, Iowa, the place of residence of the seller, such clerk knowing the sureties offered on the bond, is a clerk within the meaning of a provision, in a contract for the sale of goods, that the seller would "send a bond that clerk of court knowing sureties would accept," to a bank in Brunswick, Georgia, to be delivered to the buyer, who there resided.

2. Where in a contract for the sale of goods the seller agreed to send to a bank for the buyer a bond, in which the seller was to guarantee gross profits in sales by the buyer to be a certain amount, upon condition that the buyer pay for the goods at a fixed time, the sending of the bond by such fixed time was a condition precedent to the requirement of such payment from the buyer.

3. Proof of the execution of the bond referred to in the first headnote can not be made by the certificate of the notary public who witnessed it, or before whom the makers acknowledged their signatures, or by the affidavit of the makers thereof.

4. If upon the conclusion of the plaintiff's evidence no prima facie case for recovery has been made, it is error to grant a motion of the defendant to direct a verdict for him, over the plaintiff's objections; but a nonsuit should be awarded, that the plaintiff may have the right to renew his suit.

Argued October 16, 1907.—Decided February 3, 1908.

Complaint. Before Judge Parker. Glynn superior court. June 7, 1907.

The plaintiff brought a suit against the defendant for $299, besides interest from the 10th day of May, 1902, for goods sold on a contract, a copy of which was attached to the petition; and alleged that they had complied with all its terms. The defendant filed an answer, denying any indebtedness to the plaintiff, averring that she refused to give the notes referred to in the contract, because the plaintiff had not complied with the terms thereof, and that the sending of the bond referred to in the contract was a

condition precedent, which the plaintiff had failed to perform, and that the goods shipped by the plaintiff and rejected by the defendant had been received back by the plaintiff. This contract set forth an itemized statement of the goods sold and prices of the same, amounting to $299. One provision was: "This sale made under inducements and representations herein expressed and no other, and is not subject to countermand." It provided that the defendant could give notes for payment in instalments, if notes were given within ten days from date of invoice covering such instalments, and for 6% discount for cash within 10 days if said notes were thus given; "otherwise terms are cash 15 days." The contract was dated April 24, 1902, signed by the defendant, who requested the plaintiffs in the contract to deliver to the defendant, at its earliest convenience, f. o. b. transportation companies, the goods bought. The contract further provides as follows: "The Equitable Manufacturing Company hereby agrees to send a bond that clerk of court knowing sureties would accept, in the amount of $300.00, to protect the purchaser in all the conditions of this trade as per attached slip, bond to be sent to the Brunswick Bank & Trust Company." The material portions of the attached slip referred to provided for a guarantee by plaintiffs that the gross profits to the purchaser from the sale of jewelry would be a certain amount upon conditions, one of which was "that the purchaser settle for the goods as herein provided, and if the settlement is by note, pay the same when due."

Upon the trial the plaintiff introduced testimony the material portions of which are as follows. The invoice was dated April 30, 1902. The contract was received by the plaintiff in Iowa City, Iowa, for approval, from the defendant; and it was approved by the plaintiff, and the defendant was notified. The jewelry sold was delivered to the U. S. Express Co. at Iowa City on the 30th of April, 1902, and the show-case, pedestal, box of glass, and catalogues were delivered to the railroad company at Iowa City on the 29th of April, 1902. All were shipped to the defendant on May 1, 1902. A bond hereinafter referred to was forwarded to the Trust Company at Brunswick by registered letter from Iowa City. The goods shipped were the goods bought by the defendant. The plaintiff never received back the goods, which are now in possession of the railroad company, held as the property of the defend-

ant. One of the plaintiff company testified: "I was not present at the time it [the contract] was made. I was in Iowa City, Iowa. We received it from our salesman." Eugene Marlin, a bank collector of the bank and trust company, testified that on or about May 7 he received and took the bond down to the defendant, who refused to take it. The bond was sent back to the plaintiff by the defendant's instructions. D. W. Krauss testified that he received the claim in the latter part of 1902, and presented it to the defendant, who never made any contention in regard to the bond, but contended that she would not pay for the goods, because they were worthless. The plaintiff introduced in evidence a bond, the provisions of which were as provided for in the contract, signed as follows: "Equitable Mfg. Co. per T. O. Loveland. M. H. Taylor, B. R. Hawley." Also, a certificate of Sylvanus G. Duley, to which was attached his notarial seal, which certificate stated that T. O. Loveland, for the plaintiff, and Taylor and Hawley, sureties on the bond, acknowledged the execution thereof before him. The plaintiff also introduced in evidence an affidavit of M. H. Taylor, that he was worth $10,000 over and above exemptions and liabilities. Also, a certificate signed J. G. Marner, Clerk, with the seal of the district court of Johnson County, Iowa. This certificate stated that Taylor and Hawley were amply good and sufficient for the penalty of the bond; and if the bond was presented to him for approval as clerk of said court, he would approve it. The defendant objected to the introduction of this bond, because it had not been proved as required by law, and because it was not the bond required to be tendered by the contract; which objections were sustained. The court directed a verdict for the defendant, and the plaintiff excepted.

*D. W. Krauss,* for plaintiff. *H. F. Dunwody,* for defendant.

HOLDEN, J. (After stating the facts).

1. The contract provided that the plaintiff was to "send a bond that clerk of court knowing sureties would accept." Part of the contract was in the form of an order directed to the plaintiff in Iowa City, Iowa, from the defendant, who resided in Brunswick, Georgia. The defendant contends that the clerk of court referred to could be only the clerk of the superior court of the county in which Brunswick is situated. We do not think so. It can not be said that the plaintiff was required to execute a bond in the

county in which Brunswick was situated, as there is no provision to that effect in the contract, but the contrary is indicated by the fact that the plaintiffs, who resided in a distant State, were to send a bond. It can not be maintained that the clerk of the district court of Johnson City, Iowa, if he knew the sureties, would not come within the description of the clerk referred to in the contract.

2. One of the main questions involved in this case is whether or not the sending of the bond by plaintiff was a condition precedent to the settlement by defendant of the debt due. The plaintiff agreed in the contract to send a bond in which it would guarantee profits from the sale of the jewelry to a certain amount, upon condition that defendant settle for the goods as provided in the contract. The contract provided that unless notes were given for the debt as stipulated in the contract, "terms are cash 15 days." Notes were not given. The meaning of this condition is that the obligation of the plaintiff in the bond was not binding if the defendant failed to settle for the goods within 15 days, and the bond should have been sent before this 15 days expired. The only purpose of the bond was to protect the defendant as provided in the bond, and the defendant ought not to be compelled to settle for the goods before the bond is sent. Nor should defendant be required to settle for the goods if plaintiff sent the bond but did not send it in 15 days, because defendant failed to settle in 15 days, and this failure made the bond void and useless to defendant. The contract on its face shows that the defendant resided in Brunswick, Ga., and the plaintiff resides in a distant State; and the meaning of the contract is that if the defendant should be required to bring any suit in the matter referred to in the bond against the plaintiff, she should have some protection more than the individual liability of the plaintiff, but no protection would be afforded to her if she settled for the goods before the bond was sent, as the bond might never be sent after the defendant paid the full purchase-money under the contract. On the other hand, if defendant failed to pay the debt when due, it would be useless to send the bond after this failure, because by the very terms of the bond this failure made the bond void. Why should the plaintiff agree to put this in the bond, if it was not to send the bond before the debt was due by the defendant? The fact that the contract provided that the guar-

antee in the bond was upon the condition that the purchaser· settle for the goods when the debt was due shows that it was in the mind of the parties and was the meaning of the contract that the bond should be sent by the time when this settlement was to be made by the defendant, and the sending of this bond by that time was a condition precedent to any settlement which the defendant agreed to make.

3.    The sending of the bond being a condition precedent to payment for the goods by the defendant, it was necessary for the plaintiff to prove that by the time fixed under the contract for the defendant to make payment they sent to the trust company at Brunswick a bond of the kind called for by the contract, before it would be entitled to demand the purchase-money from the defendant, or sue her therefor. The bond offered in evidence by the plaintiff was not admissible, because there was no proof of its execution as required by law.   Neither of the sureties nor any other witness testified to its execution. The execution of this bond, whether within or without the State, could not be proved by the certificate of the notary public who acknowledged it, nor by the affidavit of the sureties. The provisions of our law applicable to deeds executed out of the State do not apply, and the only mode of proving the execution of this bond would be the usual way of proving the execution of instruments where the method of proof is not specially provided for by statute. The court committed no error in refusing to allow the writing purporting to be a bond to be introduced in evidence.

4.    The defendant introduced no evidence, but at the conclusion of the testimony offered by the plaintiff the defendant made a motion that the court direct a verdict in her favor; whereupon the plaintiff made objection to the direction of a verdict, and urged that if it was the opinion of the court that the plaintiff had not made out a prima facie case, it would be improper and illegal to direct a verdict against it, the meaning of which was that a nonsuit should be granted instead of directing a verdict.   Whenever the plaintiff fails to prove his case as laid in his declaration, the proper practice is to grant a nonsuit instead of directing a verdict in favor of the defendant, in order that the plaintiff may have the opportunity of renewing his suit. *Hines* v. *McLellan,* 117 *Ga.* 845 (45 S. E. 279) *Barnes* v. *Carter,* 120 *Ga.* 895 (48 S. E. 387);

*Zipperer* v. *Mayor,* 128 *Ga.* 135 (57 S. E. 311). We think the court committed error in directing a verdict in this case in favor of the defendant, and the judgment of the court below is affirmed, with directions that the verdict and judgment thereon be set aside and a judgment of nonsuit entered in lieu thereof, and that the defendant in error pay the costs of prosecuting the writ of error.

*Judgment affirmed, with direction. All the Justices concur, except Atkinson, J., disqualified.*