### 4934.  BECK *v.* ALBERT N. TUMLIN COMPANY.

1. "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of danger incident to his employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and did not have equal means with the master of knowing such fact, and by the exercise of ordinary care could not have known it.  If the danger be obvious and as easily known to the servant as to the master, the latter will not be liable for failing to give warning of it." *Hendrix* v. *Vale Royal Mfg. Co.,* 134 *Ga.* 712 (68 S. E. 483); Civil Code (1910), § 3131.

2. An adult servant of ordinary intelligence who has been at work on a machine a sufficient length of time to discover patent and manifest defects and dangers will be presumed to have knowledge of such defects

or dangers. In other words, the duty is placed upon a servant charged with the operation of a machine to observe every visible and manifest defect in the machine which would render his work dangerous. If his opportunity to discover such defects is equal to that of the master, he can not recover damages for personal injuries caused by his operation of the machine; and in a suit by the servant to recover such damages, the burden is upon him to show that he did not have equal means with the master of discovering these defects and dangers, and by the exercise of ordinary care could not have known of them. *Rowland* v. *Tift*, 131 *Ga.* 683 (63 S. E. 133, 20 L. R. A. (N. S.) 354); *Crown Cotton Mills* v. *McNally*, 123 *Ga.* 35 (51 S. E. 13); *Vincent* v. *Willingham Cotton Mills*, 2 *Ga. App.* 53 (58 S. E. 413); 1 Labatt, Master and Servant, § 394, and cases cited.

3. Except in the case of railroad companies, a servant can not recover against a master for personal injuries caused solely by the negligence of a fellow servant.

4. The evidence in behalf of the plaintiff showing that his injuries were due either to the negligence of a fellow servant, or to visible and patent defects in the machine that he was operating, and that he had equal means with the master of knowing of such defects or dangers, the judgment awarding a nonsuit was not erroneous.

DECIDED OCTOBER 21, 1913.

Action for damages; from city court of Floyd county—Judge Reece. March 18, 1913.

*Eubanks & Mebane,* for plaintiff.

*Maddox & Doyal,* for defendant.

HILL, C. J. This is a suit to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the plaintiff's employer. The substance of the petition, so far as material, is as follows: The plaintiff was employed by the defendant company in its cotton-gin. His work consisted of attending to the lever of the press used in the baling and pressing of cotton. The press had a maximum capacity of 500 pounds. On the day of his injury the defendant put into the press a bale of cotton weighing 530 pounds. The plaintiff, in the discharge of his duty, took hold of the lever and unhooked it, where it was fastened near the bottom of the press by means of a link, but after he had unfastened it and while he was holding it in his hand for the purpose of letting it assume a horizontal position, so that the pressure and tension thereon might be released and the hook be detached from the link and the bale be released from the press, the lever suddenly, instantly, and powerfully, and without any warning to him, jerked loose from his hand, flew upwards, and struck him on the chin, knocking him clear of the floor a distance of sixteen feet, and in-

flicting upon him the injuries set forth in the petition. He alleges that the press was defective, in that it was two inches wider at the bottom than at the top, and that this caused the tension and strain to be greater on the lever; that the hooks on the end of the rod were defective, in that they were old and worn, having been used by the defendant for nine years without repairs; that the inside of the hooks had, instead of one plain curvical surface, a double curvical surface with two concave surfaces in the inner parts, and that near the middle of the hook there was a ridge or raised surface dividing the hook into two parts, and the link slipped over this raised place, thus making the tension and strain on the lever less and causing the lever to fly up and strike the plaintiff; that this defective condition was the cause of the lever being suddenly jerked from his hand; that if the hook had had only one plain surface, he would not have been injured in this manner. He alleges, that he did not know of the defective condition of the hook; that this condition could be observed only by inspection and examination, and that it was no part of his duty to inspect and examine the machinery, but that this was the duty of the defendant, and that the defendant knew, and by the exercise of ordinary care could have known, of the defective condition; also that the defendant was negligent in not warning him of the danger. He alleges also that the defendant was guilty of negligence in putting into the press more than 500 pounds of cotton, in that it exceeded the capacity of the press, and caused the straining and tension on the hook, thus causing the link to jerk from the side of the hook and pull the lever from his hand.

The plaintiff substantially proved these facts, and also proved that there had been no change in the press during the two years in which he had been running it, and in which it had been in his charge. He proved also that there was nothing to prevent him from seeing the alleged defects in the hooks, some of his witnesses testifying that he was necessarily compelled to handle each of these hooks every time he operated the press; that the inside of the hooks would fall directly under his eye every time he operated it. He testified that the tendency in every instance was for the lever, to fly up just as it did when he was injured. As to this he said: "I guess the lever would fly up if you were not to hold it anyway. If you were just to turn the lever loose at first, before you loosened the door, it would fly up. Then the reason you put both hands on there when

you loosen it is to prevent it from doing that very thing. Then if you have got your head over out in this way, and you fail to hold it, it is going to hit you under the chin. If there was a large enough bale of cotton to throw it up, it would hit a fellow. The tendency is, when you loosen that (the tendency of the lever is), to fly up. Of course, you want to loosen it to raise it up. The pressure of that bale of cotton tends in every case to make it fly up; if it was just to be turned loose, just get off out here and prize it off, of course the lever would fly up. The tendency is to go up. The reason I took hold of it with both hands was to keep it from flying up." A witness for the plaintiff testified that he had known the press ever since it was put in, that he had frequently seen it in operation, and that every time the link was loosened the lever came up with a jump. The plaintiff testified that the ginner put the cotton into the gin and into the press, and that no one else had anything to do with this part of the work except the ginner and himself. At the conclusion of the plaintiff's evidence a nonsuit was awarded; and he excepted.

The foregoing statement is sufficient for an understanding of the rulings announced in the headnotes.

*Judgment affirmed. Russell, J., dissents.*