### 15690.  CALLAHAN *v.* ATLANTIC ICE & COAL CORPORATION.

1. A master is bound to exercise ordinary care in furnishing to his servant a safe place in which to work, but the servant must exercise a like care in discovering any patent or obvious defects therein.

(*a*) The master will not be liable for an injury to his servant resulting from a defect or danger which was obvious, and as easily known to the servant as to the master.

(*b*) In an action to recover for such injury, the burden is upon the plaintiff to show that the servant did not have equal means with the master of knowing of the defect or danger, and could not have known of the same by the exercise of ordinary care.

(*c*) The plaintiff in this case having failed to show that the defect complained of, namely, the rotten condition of a plank, was not obvious, and, therefore, not as easily known to her husband, whose death is alleged to have been caused thereby, as to the defendant master, she was not entitled to recover.

2. Assuming that the plaintiff would have been entitled to a nonsuit upon making a motion therefor, or could have voluntarily dismissed her case without prejudice, she made no such motion, so far as appears from the record, but submitted to the direction of a verdict against her after evidence had been offered by both sides. Having thus allowed the verdict to be directed, without moving to dismiss her case or to be permitted to take a nonsuit, when under the evidence she was not entitled to recover, she can not now be heard to complain of the method by which her case was disposed of.

DECIDED DECEMBER 18, 1924. REHEARING DENIED JANUARY 17, 1925.

Action for damages; from Fulton superior court—Judge Ellis. April 16, 1924.

Application for certiorari was denied by the Supreme Court.

*George & John L. Westmoreland,* for plaintiff.

*Spalding, MacDougald & Sibley, McDaniel & Neely,* for defendant.

BELL, J. Mrs. Elizabeth Callahan brought suit against Atlantic Ice and Coal Corporation for the death of her husband, alleged to have been caused by the defendant's negligence as his master or employer. It is averred that on or about November 4, 1920, while her husband was employed at the defendant's West End plant in the city of Atlanta, he was walking in the engine-room, "attempting to cross over a wooden floor that protected the top of a hot oil vat, and, as he stepped upon it, the same broke through, precipitating his leg into the boiling oil, thereby burning him so severely that he lingered until July 1, 1921, at which time he died as a result of said burn." It is further alleged, among other things, that "it was the defendant's duty to provide a safe flooring for the use of all its employees in said engine-room; that the defendant negligently failed to do so, and allowed the planks to remain in place a very long time and until they had rotted and become insecure for the purpose for which installed; that [decedent] was ignorant of the rotten condition of said planks and he did not have equal means with the master in ascertaining said defects; that said rotten planks constituted a concealed danger that could not have been discovered by the exercise of any degree of care chargeable to her husband under the law;" and that the defendant was "negligent in the failure to provide her husband with a safe place to work."

The answer contained a general denial of the plaintiff's averments. Upon the trial the plaintiff offered evidence and rested. Evidence was then introduced by the defendant, followed by rebuttal testimony in behalf of the plaintiff. After hearing all the evidence by both sides the court directed a verdict in favor of the defendant. The plaintiff brings a bill of exceptions complaining of this ruling, with reference to which the only assignment of error is as follows: "Plaintiff then and there excepted, and now excepts, and assigns the same as error, and says, that, under the evidence introduced, the said case should have been submitted to the jury, to pass upon the issues of fact thereof under the charge of the

court." There were other proceedings in the court below, and error is assigned upon other rulings, but, in our view of the case, further reference to these is unnecessary, because, assuming that all other questions except those hereafter discussed should be decided in favor of the plaintiff in error, we should still think that the direction of the verdict in favor of the defendant should be affirmed, for the reasons given in the opinion below.

1.   The master is bound to exercise ordinary care in furnishing to his servant a safe place in which to work, but the servant must exercise a like care in discovering any obvious defects therein. It is the servant's duty to observe every visible and manifest defect which would render his work dangerous. If his opportunity to make discovery of a defect in the place of work is equal to that of the master, the master is not liable for injuries caused thereby. The burden was upon the plaintiff to show that her husband, as alleged, did not have equal means with his master of discovering the rotten condition of the plank, and that by the exercise of ordinary care he could not have known thereof. *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106 (4) (43 S. E. 443); *Beck* v. *Albert N. Tumlin Co.,* 13 *Ga. App.* 618 (2) (79 S. E. 587).

The strongest, if not the only, evidence by which the plaintiff could possibly claim to have carried this burden was the testimony of Bob Smith, one of the defendant's employees, who happened to be present at the time the decedent was injured. This witness testified: "I remember when Mr. Callahan got hurt, and I was there. He was burned in that hole in the boiler-room. . . The plank broke, is what caused him to get down into that hole. He stepped on the plank like he had always been doing, and it broke, and he fell in the hole. . . I had seen that plank there before. It was rotten, not sound, and I didn't know it was rotten. It had been there so long it was rotten. . . I seen the plank after it broke. It was a long plank, right over the hole, and when he stepped on it, it gave way. It was a rotten plank."

"Whether the plaintiff had the same opportunity as the defendant of knowing of the defects alleged and proved would depend upon the character of such defects—whether they were latent or patent. Where the defect is superficially discernible or plainly apparent to the eye, the servant has the same opportunity of seeing it and knowing of it as the master. But if the defect is latent, the master would

be held bound to discover the fact sooner than the servant, because the duty of inspection rests on the master, and not on the servant. · In a case of latent defects—those which are only discoverable by proper inspection—the master is necessarily held to a higher standard of conduct than the servant, since the master owes to the servant the duty of inspection. *Hubbard* v. *Macon Ry. & Light Co.,* 5 *Ga. App.* 223 (62 S. E. 1018) ; *Cedartown Cotton Co.* v. *Miles,* 2 *Ga. App.* 83 (58 S. E. 289)." *Cochrell* v. *Langley Mfg. Co.,* 5 *Ga. App.* 317 (3), 324 (63 S. E. 244) ; *Rountree* v. *Seaboard Air-Line Ry.,* 31 *Ga. App.* 231 (120 S. E. 654).

There is no evidence whatsoever that the defect was not obvious and not as easily known to the servant as to the master. It is merely shown that the plank was rotten and that the witness Bob Smith, who it appears was employed in another department, did not know it was rotten. The plaintiff was not entitled to a verdict in the absence of proof that the defect was not discernible by a superficial observation,—that it was not obvious—in the ordinary use to which the plank was put. See *International Cotton Mills* v. *Carroll,* 22 *Ga. App.* 26 (1 *b*) (95 S. E. 472) ; *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35 (3) (51 S. E. 13) ; *Holland* v. *Durham Coal & Coke Co.,* 131 *Ga.* 715 (2) (63 S. E. 290) ; *Western & Atlantic R. Co.* v. *Bradford,* 113 *Ga.* 276 (38 S. E. 823) ; *Short* v. *Cherokee Mfg. Co.,* 3 *Ga. App.* 377 (59 S. E. 1115) ; *Jellico* v. *White,* 11 *Ga. App.* 836 (76 S. E. 599) ; *Walker* v. *Atlanta & West Point R. Co.,* 103 *Ga.* 820 (1) (30 S. E. 503) ; *Biederman* v. *Montezuma Mfg. Co.,* 29 *Ga. App.* 589 (116 S. E. 225) ; *Kilgo* v. *Rome Soil Pipe Mfg. Co.,* 16 *Ga. App.* 737 (4, 5) (86 S. E. 82).

Moreover, it appears, without dispute, that plaintiff's husband was employed by the defendant as the keeper of its barn, in its delivery department, with duties appertaining to its vehicles and stock. The evidence shows that the scope of his employment did not extend to the performance of any duty in the engine-room unless the sphere of his labors was extended thereto by implication by reason of the fact that for a long period of time he was accustomed to go to the engine-room for nails, electric-light globes, oil, tools, or other things kept therein which were needed by the decedent in the proper performance of his duties at the barn, and except as he may have passed through the engine-room in going to and from the place of his general employment. It does not appear that any officer

or *agent* of the defendant had knowledge that the decedent frequented the engine-room for either purpose. Assuming, however, that knowledge by the defendant might be inferred from the long continuance of the decedent's custom to visit or pass through the engine-room for one or both of the purposes indicated above, and assuming further that the scope of his original employment was thereby impliedly enlarged so as to require his presence there in certain instances, it would seem that the burden would have rested upon the plaintiff to show that her husband, at the particular time of his injury, was in the engine-room for one of the special purposes which on occasion would necessitate his presence there. Upon this point there is a total absence of evidence. Witnesses were interrogated with reference thereto, but no one was able to say why the decedent was in the engine-room at the particular time in question. See *Atlanta & Charlotte Air-Line Ry. Co.* v. *Ray,* 70 *Ga.* 674. See also *Strange* v. *Wrightsville & Tennille R. Co.,* 133 *Ga.* 730 (66 S. E. 774) ; *Manchester Mfg. Co.* v. *Polk,* 115 *Ga.* 542 (3) (41 S. E. 1015).

2.   Ordinarily, when at the conclusion of the evidence offered by the plaintiff, there is merely a failure to make out a prima facie case, it is error to direct a verdict for the defendant, but the court should award a nonsuit, thereby reserving to the plaintiff the right to institute a subsequent action for the same cause if he so desires. *Hines* v. *McLellan,* 117 *Ga.* 845 (1) ; *Barnes* v. *Carter,* 120 *Ga.* 895 (2) ; *Zipperer* v. *Mayor &c. of Savannah,* 128 *Ga.* 135 (4) (57 S. E. 311) ; *Equitable Mfg. Co.* v. *Davis,* 130 *Ga.* 67 (4) (60 S. E. 262) ; *Williams* v. *Perry,* 136 *Ga.* 453 (2) (71 S. E. 886) ; *Atlantic Ice & Coal Corporation* v. *Town of Decatur,* 154 *Ga.* 882 (5) (115 S. E. 912) ; *Decatur County Bank* v. *Thomason,* 31 *Ga. App.* 299 (3) (120 S. E. 642) ; *Gowen* v. *New Orleans Naval Stores Co.,* 157 *Ga.* 107 (2) (120 S. E. 776). But where, as in this case, the plaintiff offered evidence and rested, and evidence was then introduced by the defendant, followed by rebuttal testimony on behalf of the plaintiff, this court, under repeated rulings, will not interfere with the judgment of the trial court in directing a verdict for the defendant merely because a nonsuit at the close of the plaintiff's evidence would have been the proper disposition of the case. It is to be inferred that the plaintiff would not have favored a nonsuit. She was seeking a verdict in her

behalf at the hands of the jury, and was pressing her case to that end. The jury, however, could not have found in her favor under the evidence, but would have been obliged to find for the defendant. She is in no worse position on account of the judge's direction than she would have been if the case had gone to the jury and they had found as they should have found under the evidence. "Conceding that the plaintiff 'would have been entitled to a nonsuit upon making a motion therefor, or could have voluntarily dismissed her case without prejudice, she made no motion to that effect [so far as appears from the record], but submitted to the direction of a verdict against her; and, having allowed the verdict to be thus taken against her without moving to dismiss her case or to be permitted to take a nonsuit, she can not now be heard to complain of the method in which her suit was disposed of. *Thompson* v. *Etowah Iron Co.*, 91 *Ga.* 538 (2). See also *Grand Rapids Furniture Co.* v. *Morel*, 110 *Ga.* 321 (2).' *Watson* v. *Barnes*, 125 *Ga.* 773, 775 (54 S. E. 723)." *Williams* v. *Farmers State Bank*, 22 *Ga. App.* 656, 660 (97 S. E. 249).

While we do not place our ruling upon this ground, it is noticed that the assignment of error merely complains "that under the evidence introduced the said case should have been submitted to the jury;" not that the case should have been nonsuited instead. See *Small* v. *Cohen*, 102 *Ga.* 248 (3) (29 S. E. 430); *Poole* v. *Trimble*, 102 *Ga.* 773, 775 (29 S. E. 871), and the dissenting opinion of Chief Justice Russell in *Atlantic Ice & Coal Corp.* v. *Town of Decatur*, supra.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*