## ROSS *v.* DURRENCE.

No. 8034. SEPTEMBER 17, 1931.

*W. T. Burkhalter,* for plaintiff. *C. L. Cowart,* for defendant.

RUSSELL, C. J. In my opinion this case was tried without due regard to the pleadings as well as without due consideration of the evidence. A verdict cannot be directed in favor of either party unless it conforms to the pleadings as well as to the evidence. In the case before us, Mrs. Ross asked an injunction to restrain Durrence from proceeding to exercise the power of sale of 20 acres of land contained in a deed to secure debt, upon the ground that the deed was given as security for a debt of her husband, and therefore was void as to her. She also asked that for that reason the deed be set aside and annuled. It was further alleged in the petition that if she was liable for any amount, she was entitled to certain credits amounting to $265. The defendant in his answer joined issue with the plaintiff on both of her contentions. He al-

leged that the debt was that of the wife; and that though the original debts of the husband were paid at the request of the wife, the money was obtained for a matter in which the firm of Purvis & Durrence was in no way interested. It was also alleged in the answer that the plaintiff was not entitled to any credit upon the debt. There were therefore two distinct issues in the case under the pleadings.

As said by Mr. Justice Cobb in *Kelly* v. *Strouse*, 116 *Ga.* 874, 894 (43 S. E. 280) : "A judge may be constrained to overrule a motion for nonsuit, and possibly a motion for new trial, when he knows that the plaintiff has no cause of action; but he will never be required to render or permit to be rendered a judgment in favor of a party who is in law not entitled to prevail, when the case is in limine and no estoppel is operating. At any time before verdict he may dismiss the case, strike the plea, or give the case such appropriate direction that the result will be consistent with the law applicable to the facts involved. See *McCook* v. *Crawford*, 114 *Ga.* 337 [40 S. E. 225], and cases cited; *Crew* v. *Hutcheson*, [115 *Ga.* 528, 42 S. E. 16]. A court of last resort which, when not constrained by positive express legislative enactment, should lay down the rule that a trial judge, at the outset of a case, when nothing has been done by either party having in law the effect to take the case from his absolute control, must not only permit but require the case to take a direction which is utterly at variance with the law, would justly become a by-word and reproach among an intelligent bar. The court of last resort owes to itself the duty not to make a ruling which would bring the trial judge into such a condition. A judge when in full control of the case having to stultify himself by declaring that a judgment should be rendered which is well known to him and every one not to be founded upon law, reason, precedent, or common sense, is a condition of which the legal mind should not be able to conceive. A party may estop himself from calling in question a bad judgment, an erroneous judgment, a judgment that ought not to have been rendered, a judgment that could not have been rendered if an objection had been made 'at the proper time and in the proper manner;' but that a court should be required to affirmatively hold that such a judgment must be rendered by it is not the law, never has been the law, and never ought to be the law. The mere suggestion of such an

idea shocks the legal mind. If a court by any affirmative ruling holds that a judgment should be rendered in favor of a party who in law is not entitled to prevail, such a ruling, no matter in what way it may be made, is an erroneous ruling; and may be reversed on writ of error directly assigning error thereon. We would be far from candid if we did not admit that some of the various expressions in different cases, if carried to their logical extent, would lead to a conclusion different from that above stated. It is apparent from the record that the able and learned trial judge whose decision is under review was misled by some of these expressions: We have in some cases been misled ourselves by our own expressions. When all the cases in which such expressions appear are critically examined in the light of the questions then involved, we do not think there will be found any authoritative ruling which conflicts with the views herein presented."

With the two issues presented in this case, the judge directed a verdict in favor of the defendant, which can mean nothing less than that both issues were directed in his favor. This verdict was directed at the conclusion of the plaintiff's testimony, and without the introduction of any evidence on the part of the defendant. The plaintiff's husband and she herself both testified that the money which was advanced was used to pay off debts of the husband. This alone would have availed the plaintiff nothing in showing that her deed was invalid. "A sale by a married woman of property belonging to her separate estate, though made for the sole purpose of raising money with which to pay a debt or liability of her husband, is nevertheless valid and binding upon her, even if the purchaser, he not being a creditor of the husband and having nothing to do with any arrangement or transaction between the husband and wife looking to the making of such sale, knew that the proceeds thereof were to be applied for the purpose stated." *Nelms* v. *Keller,* 103 *Ga.* 745 (30 S. E. 572). As said by Judge Powell in *Third National Bank* v. *Poe,* 5 *Ga. App.* 117 (62 S. E. 826) : "She may give her property or money to her husband that he may pay his debts with it, in the absence of fraud; and where a gift is shown, the burden of proving fraud is on her. Civil Code, § 2491; *Cain* v. *Ligon,* 71 *Ga.* 692 (51 Am. R. 281) ; *Hadden* v. *Larned,* 87 *Ga.* 634 (13 S. E. 806). She may borrow money to be used by her husband to pay his debts, provided the husband's

creditor is not the lender. *White* v. *Stocker,* 85 *Ga.* 200 (11 S. E. 604). . . The fact that it is to the lender's interest that the wife should borrow the money from him, to furnish it to her husband to pay his debts, makes the wife's contract with the lender no less valid. *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390). . . She may legally procure a third person to pay the debt of her husband, and will be bound by her contract to reimburse him for so doing. *Hill* v. *Cooley,* 112 *Ga.* 116 (37 S. E. 109)." There is no question that the principle stated in all the foregoing cases is sound. But in my opinion the state of the pleadings and evidence did not demand or even authorize the direction of a verdict in this case. The decisions of this court cited above, construing the law, do not repeal, or in a proper case affect in any wise, the law as written in the Code of 1910. § 2993: "All the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate property of the wife; and all property given to, inherited, or acquired by the wife during coverture shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband." § 3007: "The wife is a feme sole as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband; and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." § 6456: "All property of the wife at the time of her marriage, and all property given to, inherited, or acquired by her, shall remain her separate property, and not be liable for the debts of her husband." It is in evidence in this case that without the wife ever having seen Mr. Durrence he deposited in bank to the credit of the husband the consideration of the deed in this case, and the husband by his own check paid this money to Mr. Dubberly, the attorney for Purvis, and thereafter by persuasion, and over the protests of his wife, obtained her signature to the deed sought to be set aside in this case.

This evidence does not show that Mrs. Ross was herself borrowing the money, nor that she did borrow it upon a security deed and give the money to her husband for the purpose of pay-

ing his debts. A jury could reasonably and properly have inferred the contrary from the fact that Durrence agreed to pay the prior debt ($431) which had been assumed by Purvis & Durrence, only if Mrs. Ross would execute to him the security deed; and yet it was stipulated that Durrence would give Ross, the husband, employment and thus enable him to pay the debt. It must be borne in mind that in the execution of the first security deed by Mrs. Ross, Purvis and the defendant, Durrence, were jointly interested, and their settlement and discharge of the debts of Ross, the husband, amounting to $486, was the consideration of the first instrument. It is true that none of the accounts embraced in Ross's liability of $486 represented an indebtedness on the part of Ross to Purvis & Durrence. It may be assumed as true, and doubtless is true, that Ross owed Purvis & Durrence nothing. But the witnesses introduced did not know, and the record does not show, what discount or margin of profit accrued to Purvis & Durrence in the purchase, from the various creditors of Ross, of the unsecured accounts of this debtor. The evidence shows that Mrs. Ross never discussed the matter of the satisfaction of her husband's debts with Purvis or Durrence. She did not request that they should discharge them. According to the evidence in this case, Purvis & Durrence agreed with Ross to discharge his debts if his wife would sign a deed conveying to them as security the property in question, which she had owned before her marriage. After this transaction had been completed according to Purvis & Durrence's agreement with Ross, and thereby Ross was indebted to Purvis & Durrence, the wife grudgingly became her husband's security by signing the deed. It matters not whether she signed this security deed grudgingly or willingly; a jury would have been authorized to find for the plaintiff under the very distinct provision of § 6456 of the Civil Code of 1910, that "all property of the wife at the time of her marriage . . shall remain her separate property, and not be liable for the debts of her husband." "She can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband; and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." § 3007. A jury had the right to consider all the facts and circumstances in regard to the execution of both the security deeds involved in this trans-

action, and they would have been authorized to consider whether in each case the real borrower was the husband instead of the wife, and whether thereafter the wife did become a mere security for her husband's debts. If it appeared without dispute or doubt that Mrs. Ross herself made a loan, and executed a note, and gave security by deed upon her own property, for the purpose of giving the money to her husband for the purpose of thereafter paying her husband's debts, the case presented would under our law be quite different from an instance where the wife was induced to give a deed as security to pay a debt which the husband had incurred to a new creditor who had discharged his obligations to prior creditors.

It is argued in the brief of the defendant that the direction of a verdict, without regard to the payments upon the debt, was not erroneous, because the plaintiff should have tendered or offered to tender the sum admitted to be due. No tender was required to be made, because the plaintiff's main contention was that the deed should be set aside because it was void in toto as an assumption by the wife of a debt of her husband. There is no evidence that would have required a jury to find that the wife asked a loan of either Purvis or Durrence for the purpose of paying her husband's debts, or for any other purpose. To the contrary, the evidence is that the husband procured the consent of the lenders in both instances to advance money to him, and thereafter, without the wife (the plaintiff) ever seeing Durrence, he advanced the money and she consented, in response to her husband's pleadings, to sign the deed conveying the little home, which was hers before she married, for the purpose of paying the debt incurred by him when he obtained from Purvis & Durrence in the first instance to pay his debts and from Durrence for the same purpose in the instance now under review. If it had been shown that the wife had ever herself approached either of the lenders in this case, under the principle stated in the *Nelms* case, supra, the court would have been authorized to give some direction to the case. The plaintiff would have failed to make out a case authorizing an injunction, and a nonsuit or dismissal as to that branch of the case would have resulted. However, it appears from the record undisputed, that the original debtor, the husband in this case, was to pay this debt by working for Purvis and Durrence, in the case of the first advance

made by them to take up all his debts, amounting to $486; and the evidence authorized the inference that the same is true as to the agreement made with the defendant, Durrence, when he replaced Purvis as the creditor. A jury would not have been required to find that the loan was in fact made to the wife for the purpose of her paying her husband's debt (as she had a right to do), but was merely a scheme by which the wife, for the benefit of each of these creditors, assumed her husband's debt. In the state of the record, the court could in no event have done more than award a nonsuit upon the ground that the plaintiff had failed to make out a case authorizing the grant of an injunction. As briefly stated by Mr. Justice Gilbert in *Perkins* v. *West,* 146 *Ga.* 751 (92 S. E. 277): "Where a plaintiff fails to make out a prima facie case, a verdict for the defendant should not be directed, but a judgment of nonsuit should be entered." Among many other authorities that might be cited to the same effect are *Barnes* v. *Carter,* 120 *Ga.* 895 (2) (48 S. E. 387); *Equitable Mfg. Co.* v. *Davis,* 130 *Ga.* 67 (4) (60 S. E. 262); *Richardson* v. *Hames,* 143 *Ga.* 392 (85 S. E. 126). In directing a verdict for the defendant on all the issues in the case, the court precluded the plaintiff from obtaining the benefit of the alleged payments which were brought in question by the pleadings. It may be said that the plaintiff could thereafter take advantage of these payments; but I consider it to be a well-settled doctrine of equity that when a court of chancery takes charge of all the issues in dispute between the parties in a cause, it will avoid a multiplicity of suits, instead of compelling unnecessary litigation. Under the evidence in this case, if there is any doubt about there having been payment of $90 at one time, and a mule which was agreed to be taken at a valuation of $175 at another time, it must be perfectly plain that the jury and not the court should have solved any such doubt.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., dissenting. I am of the opinion that the court did not err in directing the verdict and rendering the judgment complained of. While the petitioner claims that she should have been given credit for a certain amount set forth in her petition, she does not claim that the entire debt had been paid. The fact that a payment had been made upon the debt less than the whole debt did not entitle her to the injunctive relief sought; but the de-

fendant grantee in the security deed was in the exercise of his rights when he advertised the property for sale in pursuance of the power contained in the deed. When the property is sold, the creditor will be only entitled to so much of the amount brought at the sale as will satisfy his debt and the costs in the case.

Neither Durrence, the grantee in the last deed, nor Durrence and Purvis, the grantees in the first deed, were creditors of the husband of petitioner, and the security deed to Durrence and Purvis was not executed to secure a debt due to the grantees in that deed, but it was executed that the husband might pay off a debt to other creditors; and the case falls within the ruling made in the case of *Nelms* v. *Keller,* 103 *Ga.* 745 (supra), wherein it was said: "A sale by a married woman of property belonging to her separate estate, though made for the sole purpose of raising money with which to pay a debt or liability of her husband, is nevertheless valid and binding upon her, even if the purchaser, he not being a creditor of the husband and having nothing to do with any arrangement or transaction between the husband and wife looking to the making of such sale, knew that the proceeds thereof were to be applied for the purpose stated." See also *Third National Bank* v. *Poe,* 5 *Ga. App.* 113 (supra), wherein is laid down a doctrine to be found in several decisions by this court.