24663. PIEDMONT FEED AND GROCERY COMPANY INC. v. GEORGIA FEED AND GROCERY COMPANY INC.

DECIDED FEBRUARY 19, 1936.

*Isaac M. Wengrow,* for plaintiff in error.
*John B. McCallum, Joseph Jacobs,* contra.

STEPHENS, J.   Suit was brought in the municipal court of Atlanta by the Georgia Feed & Grocery Company, a corporation, against the Piedmont Feed and Grocery Company, a corporation, on a series of 10 checks, each for $20, dated monthly, serially, beginning November 10, 1933, and ending August 10, 1934.   These checks were drawn on the Fulton National Bank of Atlanta by the Piedmont Feed and Grocery Company, signed by J. Oxman, president of that corporation and payable to the order of the Georgia Feed & Grocery Company.   The defendant filed an answer admitting the execution and delivery of these checks and its refusal to pay them and set up as its defense that these checks were given for the payment of the personal obligation of its president, J. Oxman, and that they constituted an ultra vires contract which was not binding on the defendant.   The defendant also filed a cross-action for certain open accounts which were alleged to have been turned over to and collected by the plaintiff for the benefit of the defendant.   On the trial a verdict was rendered for the plaintiff for the full amount sued for and interest.

The undisputed evidence shows as follows:   Over a period of two or three years prior to July, 1931, M. L. Piassick advanced various sums of money to and for the use of his brother-in-law, J. Oxman.   In July, 1931, Piassick formed a corporation, Georgia Feed & Grocery Company, to carry on his feed and grocery business which prior to that time he had conducted individually under that name.   At the same time J. Oxman incorporated his feed and grocery business as the Piedmont Feed & Grocery Company which formerly he had conducted individually.   Piassick and his wife and Oxman and his wife were the sole stockholders of their respective corporations; and both were controlled and managed by Piassick and Oxman respectively.   Piassick paid the cost of incorporating both companies.   After the Piedmont Feed & Grocery

Company was organized, J. Oxman as president of the corporation, issued to the Georgia Feed & Grocery Company in payment of the monies advanced by Piassick for the use of Oxman and for the costs of incorporation, a series of post-dated checks due monthly. After paying a number of these checks Piedmont Feed & Grocery Company stopped payment on the rest. By agreement of Oxman and Piassick an arbitration was held before the Rabbi. This arbitration resulted in a finding that Oxman should pay to Piassick $635.81. In compliance therewith Oxman issued to the Georgia Feed & Grocery Company another series of 32 post-dated checks of the Piedmont Feed & Grocery Company each for the sum of $20 except the last. After paying some six or seven of this new series Piedmont Feed & Grocery Company again stopped payment and refused to pay the rest of the checks, which included the 10 checks sued on.

The defendant's motion for new trial was overruled and the defendant brings the case to this court on exceptions to that ruling. Only one ground of the motion is insisted on by argument by the plaintiff in error. That ground is one which complains of the charge of the court which was as follows: "If you believe that all interest in the plaintiff corporation and that all interest in the defendant corporation rests or rested as alleged in the president of the plaintiff and the president of the defendant and their respective wives, and if you further believe that the plaintiff and defendant have established a course of dealing, one with the other, which has been established with that certainty as to make it a custom between them, and if you believe that the president of the plaintiff and the president of the defendant had transactions each with the other in the corporate name, and that other persons at interest, that is, the wives of these parties, either expressly ratified what was done or stood by with knowledge and suffered it to be done, then in that event each of these parties, the corporations, would be estopped from denying the validity of such conduct and in that event the acts or conduct of the president of the plaintiff and the president of the defendant would be imputable to the corporations respectively as being the conduct and acts of the general agents of such corporations ratified by them."

Headnotes 1 and 2 need no elaboration. The motion to dismiss the writ of error is overruled.

The sole question for determination is whether a corporation can plead ultra vires as respects an executory contract executed in its name by its lawfully constituted officers where all the capital stock of the corporation was owned by the president who executed the contract in behalf of the corporation and his wife who had knowledge of the making of the contract and did not object thereto but acquiesced therein. "No corporation, whether public or private, organized under the laws of this State, can, in the absence of express charter authority so to do, lend its credit for the mere accommodation of third persons." *Nalley Land Company* v. *Merchants Bank*, 178 *Ga.* 818 (2) (174 S. E. 618); *Taliaferro* v. *Cowart*, 47 *Ga. App.* 730 (2 *b*) (171 S. E. 406). "A corporation can not ratify a contract which it has no legal power to make. . . An executory contract of a corporation wholly beyond the scope of corporate power can not be enforced against it by one who at the time the contract was made had notice of its illegality, even though all of the stockholders assented to its execution or ratified it after it was made. This rule is applied whether the corporation be of a public or a private nature, and without reference to whether any public policy is contravened by the contract, or any interests of creditors are injuriously affected by it. The stockholders in a corporation can not substitute their will for the legislative grant of power. . . The consent of all the stockholders will not estop the corporation from challenging the legality of an act which is wholly beyond the scope of its charter powers." *Savannah Ice Co.* v. *Canal-Louisiana Bank*, 12 *Ga. App.* 818, 827 (79 S. E. 45). The contracts as evidenced by the checks were executory contracts executed by the defendant corporation, and were given in payment of a personal obligation of one of the officers of the corporation. The contracts were clearly ultra vires. Although all the stockholders of the corporation, which included J. Oxman and his wife, may have consented to the execution of these contracts and the payments out of the assets of the corporation of the personal debt of Oxman, one of its officers, the corporation would not be estopped from defending a suit against it on the checks on the ground that the contracts represented by the checks were ultra vires. The court therefore erred in charging that where there had been a course of dealings between the corporations by which individual officers of the corporations did business with each

other, each in the name of his respective corporation, and where the other persons at interest, as the wives of these officers, either expressly ratified what was done, or with knowledge suffered it to be done, then the corporation would be estopped from denying these acts.

The remaining grounds of the motion for new trial are not insisted on by the plaintiff in error by oral argument or by argument in the brief. The plaintiff in error merely insists generally on these assignments of error in the amendment to the motion, and contends that the court erred as therein set out. These assignments of error relate to rulings on testimony, and the failure of the judge to direct a verdict for the defendant. None of them appears to be meritorious. The court erred in overruling the motion for new trial.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*