### 34725.   CHOCTAW LUMBER COMPANY
### *v.* ATLANTA BAND MILL, INC.

Decided July 14, 1953—Rehearing denied July 30, 1953.

*Troutman, Sams, Schroder & Lockerman, T. M. Smith, Jr.,* for plaintiff in error.

*Adair & Goldthwaite,* contra.

TOWNSEND, J.  Most of the pertinent evidence has been summarized in the following judgment of nonsuit:  "Upon the conclusion of the testimony of the plaintiff, the defendant moved for a nonsuit and it appears to the court that the plaintiff has proven the following of its allegations with reference to direct interest: It has proven that Atlanta Band Mill, Inc. and Atlanta Band Mill Sales, Inc. had identical incorporators and identical officers and boards of directors; that the stockholders were identical, except that some of the stock was held by the family of one of the stockholders, being transferred by said stockholder gratuitously, and over which stock said stockholder retained and exercised control.  That there is an intended similarity in corporate names. They are engaged in a joint undertaking, in that Atlanta Band Mill Sales, Inc. was an outlet for a material part of the product of Atlanta Band Mill, Inc., and that the financial failure or impairment of Atlanta Band Mill Sales, Inc. would have financial repercussions on Atlanta Band Mill, Inc., and that the failure of Atlanta Band Mill Sales, Inc. would seriously impair the distribution of the products as well as the credit of Atlanta Band Mill, Inc.  It has not been proven, however, that Atlanta Band Mill, Inc. had a direct interest, other than above recited, in the contract between the plaintiff and Atlanta Band Mill Sales, Inc., being the contract guaranteed by the defendant for a consideration of $5.00.  Therefore, the motion of the defendant for a nonsuit is granted."

In addition, W. L. Bryan, who was at the time secretary, treasurer, and stockholder in both Atlanta Band Mill, Inc., and Atlanta Band Mill Sales, Inc., stated to the plaintiff, in arranging the extension of time, that he wished to avoid a suit against Atlanta Band Mill Sales, which would hurt the credit of Atlanta Band Mill, and that such extension was a matter of immediate concern to the guarantor.

Proper notice, and the insolvency of the sales company, are not contested.  The sole issue is whether the defendant had the power to guarantee the debt of its sales agency.

Prior to the Corporation Act of 1938 (Ga. L. Ex. Sess. 1937-

38, p. 214) the law as stated in Code § 22-701, was as follows: "Corporations created under Chapter 22-3 may exercise all corporate powers necessary to the purpose of their organization, but shall make no contract, or purchase or hold any property of any kind, except such as is necessary in legitimately carrying into effect such purpose, or for securing debts due to the company." Following such act, Code (Ann. Supp.) § 22-1828 (c) gives to corporations the power "to guarantee, become surety upon or indorse the contracts or obligations of any other corporation, firm or individual as to matters in which the corporation guaranteeing has a direct interest, but shall not have the right to enter into any contract of guaranty, suretyship or indorsement where the corporation guaranteeing has no direct interest in the subject matter of the contract guaranteed or to make any purely accommodation guaranty, indorsement or contract of suretyship, unless such right is contained in the charter of the corporation or an amendment lawfully made thereto."

The latter Code section certainly enlarged the meaning of the former to some extent as to the power of corporations to enter into guaranty contracts executed upon a valid consideration. The contract here had such consideration. See *Rice* v. *Harris*, 52 *Ga. App.* 42 (182 S. E. 404) ; *Hartsfield Co.* v. *Shoaf,* 56 *Ga. App.* 121 (192 S. E. 246) ; s.c., 184 *Ga.* 378 (191 S. E. 693). The question of the extent to which such powers were enlarged must be determined. It is no longer necessary to prove that the contract was "necessary . . . in legitimately carrying into effect such purpose [of the corporate organization] or for securing debts due to the company," but it must be shown that the guarantor corporation has a "direct interest in the subject matter of the contract guaranteed." The contract guaranteed was one granting an extension of time to the sales agency to pay a debt, for the purpose of avoiding a lawsuit which would have the effect of injuring the credit of the defendant. The term *direct interest* has previously been the subject of judicial construction. It is defined in Black's Law Dictionary as meaning "not contingent or doubtful." An employee seeking unemployment compensation is "directly interested" in a labor dispute which would affect the amount of wages received by himself and other employees similarly situated, under an unemployment compensation statute. *Huiet* v. *Boyd,*

64 *Ga. App.* 564 (13 S. E. 2d 863); Lanyon *v.* Administrator, Unemp. Comp. Act, 139 Conn. 20 (89 Atl. 2d 558, 565). The term "directly interested" in such a statute does not mean the same thing as "participation," for participation and direct interest can exist independently of each other. Auker *v.* Review Bd. Ind. Emp. Sec. Div., 117 Ind. App. 486 (71 N. E. 2d 629, 632). Where the legal effect of a judgment would be to establish a claim against a witness, such witness has a direct interest in the outcome of the suit. Feitl *v.* Chicago City Ry. Co., 211 Ill. 279 (71 N. E. 991, 994). The "direct interests" of a labor union may include those of nonmembers who are neutrals within the same territory. Opera on Tour *v.* Weber, 258 App. Div. 516 (17 N.Y.S. 2d 144). Under a statute affecting the competency of witnesses, a witness who is a cashier, director, and stockholder of the plaintiff corporation is a "person directly interested." Brown *v.* First National Bank of Douglas County, 49 Colo. 393 (113 Pac. 483); and such person has a "direct legal interest" in the subject matter of the suit. Dickenson *v.* Columbus State Bank, 71 Neb. 260 (98 N. W. 813). Persons having a direct interest in the trial of a crime may include not only the defendant, witnesses and officers of court, but a relative or friend whom the defendant desires to give him assistance or comfort without interfering with the trial. Com. *v.* Blondin, 324 Mass. 564 (87 N. E. 2d 455, 460). It is thus obvious that judicial construction has not confined the meaning of the term to the participants alone, but has extended it to include others upon whom the determination of the subject matter may have a secondary effect, so long as the effect, as to them, is not merely contingent, uncertain, or conjectural. Applying this definition to the proof offered by the plaintiff on the trial of the case, it appears that the defendant guarantor whose owners had created the sales agency for its convenience was financially involved in the latter's credit, to the extent that a failure of the debtor corporation would seriously impair both the guarantor's credit and the distribution of its products; that it entered into the contract to prevent a lawsuit being filed against the sales company; and that the sales company was either insolvent at that time or became so between the date of the contract and the date of the filing of this suit, approximately five months later.

It was held in *Savannah Ice Co.* v. *Canal-Louisiana Bank,* 12 *Ga. App.* 818 (79 S. E. 45), that although one corporation may own all the stock in another corporation, the two do not become merged, but remain separate and distinct legal entities, and the same is of course true although two corporations have the same officers, shareholders, and boards of directors. It was also pointed out in that case that a corporation will not be estopped from repudiating an act which it is entirely beyond the charter power of the corporation to do, as opposed to an act which, while within the charter power of the corporation, is performed by an officer without authority to perform it. In the latter case the doctrine of estoppel may be invoked; in the former, it may not. If the guarantor corporation has no direct interest in the subject matter of the contract of guaranty, it cannot be held under the doctrine of estoppel. Whether such interest exists depends upon the relationship of the corporations to each other. It is certainly within the corporate power to transact its business, or a portion thereof, through a sales agency created and managed by the owners of the corporation; and it is within the corporate power to enter into such a relationship or joint enterprise with its sales company when the success of the latter is directly and immediately connected with that of the former. The plaintiff here proved upon the trial of the case that the defendant had by previous admissions, for the purpose of obtaining the contract in question, established that such relationship existed.

In *Mercantile Trust Co.* v. *Kiser,* 91 *Ga.* 636 (18 S. E. 358), it was held that, under the general law in existence prior to the Corporation Act of 1938, supra, a sawmill company with charter power to create debts for the procurement of its timber supply might guarantee the bonded indebtedness of a railroad company, which although also serving others, enabled it more conveniently to transport timber to market, and that this was especially true where the same persons owned most of the stock and composed most of the directors of both corporations. See also *Williams Brothers Lumber Co.* v. *Young Men's Syrian Assn.,* 65 *Ga. App.* 480 (15 S. E. 2d 908).

*Savannah Ice Co.* v. *Canal-Louisiana Bank,* supra; *Piedmont Feed &c. Co.* v. *Georgia Feed &c. Co.,* 52 *Ga. App.* 847 (184 S. E. 899); *Nalley Land &c. Co.* v. *Merchants &c. Bank,* 178 *Ga.*

818 (174 S. E. 618), and other cases cited by the defendant in error, were decided prior to the enactment of the Corporation Act of 1938, and, further, they all deal with accommodation indorsements, which are still forbidden under present law except in cases where the corporation has express charter power to enter into such contracts.

It follows, therefore, that the evidence in this record is sufficient to authorize the finding that the defendant corporation had a direct interest in the subject matter of the contracts guaranteed within the meaning of Code (Ann. Supp.) § 22-1828. The trial court erred in granting a nonsuit and in overruling the motion to reinstate the case.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*